**LEVI & KORSINKSY, LLP**
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for KNS Holdings LLC*
*DBPP UA Jan. 1, 2016 and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG M. ROSE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BUTTERFLY NETWORK, INC. F/K/A LONGVIEW ACQUISITION CORP., TODD M. FRUCHTERMAN, STEPHANIE FIELDING, JONATHAN M. ROTHBERG, JOHN RODIN, LARRY ROBBINS, MARK HOROWITZ, WESTLEY MOORE, DEREK CRIBBS, and RANDY SIMPSON, <br><br> Defendants. | Case No. 2:22-cv-00854-JXN-JBC <br><br> **KNS HOLDINGS LLC DBPP UA JAN. 1, 2016'S MEMORANDUM OF LAW IN REPLY AND FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL** <br><br> **MOTION DATE: May 16, 2022** |

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................................1

II.  ARGUMENT........................................................................................2

A. KNS Triggered the Statutory Lead Plaintiff Presumption under the PSLRA Because It Has the Largest Financial Interest in the Litigation and Satisfied Its *Prima Facie* Burden of Typicality and Adequacy. ...................................2

B. El Paso Cannot Use Speculation and Conjecture to Rebut KNS's Presumption of Lead Plaintiff.........................................................................5

i.   KNS's Plan Agreement Confirms that Kwan Fan Is Authorized to Act on behalf of KNS as Its Trustee and the Sole Managing Member of Its Administrator........................................................................................6

ii.  A Twelve-Year Old Bankruptcy Filing Is Irrelevant and Does Not Provide El Paso with Any Credible Basis for Questioning KNS's Ability to Represent the Class. ............................................................11

iii. KNS's Intra-Class Period Purchases on November 15, 2021, Do Not Make It Atypical or Inadequate.........................................................12

C. KNS Can Represent the Entire Class Without a Co-Lead Plaintiff. .............14

III. CONCLUSION....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Church v. Glencore PLC*,
   2018 U.S. Dist. LEXIS 210229 (D.N.J. Dec. 12, 2018)....................................15

*Doherty v. Pivotal Software, Inc.*,
   2019 U.S. Dist. LEXIS 195360 (N.D. Cal. Nov. 8, 2019) ..................................6

*Faris v. Longtop Fin. Techs. Ltd.*,
   2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011)...................................14

*Hevesi v. Citigroup, Inc.*,
   366 F.3d 70 (2d Cir. 2004) ................................................................................15

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   2012 U.S. Dist. LEXIS 53878 (S.D.N.Y. Apr. 16, 2012) .................................15

*In re DVI Inc. Securities Litigation*,
   249 F.R.D. 196 (E.D. Pa. 2008)........................................................................13

*In re Groupon Secs. Litig.*,
   2012 U.S. Dist. LEXIS 123899 (N.D. Ill. Aug. 28, 2012) ................................11

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000)..............................................................................5

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005) ............................................................................6

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ......................................................................13

*In re Moody's Corp. Sec. Litig.*,
   274 F.R.D. 480 (S.D.N.Y. 2011) ......................................................................13

*In re PMA Capital Corp. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 15696 (E.D. Pa. July 27, 2005) ...................................15

*In re Safeguard Scientifics*,
   216 F.R.D. 577 (E.D. Pa. 2003)........................................................................14

iii

*In re Salomon Analyst Metromedia*,
   236 F.R.D. 208 (S.D.N.Y. 2006) ...............................................................13

*In re Snap Inc. Sec. Litig.*,
   2019 U.S. Dist. LEXIS 88379 (C.D. Cal. Apr. 1, 2019) ...................................14

*In re Spectranetics Corp. Sec. Litig.*,
   2009 U.S. Dist. LEXIS 54809 (D. Colo. June 15, 2009) ..................................10

*Johnson v. Geico Gas Co.*,
   673 F. Supp. 2d 255 (D. Del. 2009)...............................................................12

*Kanefsky v. Honeywell Int'l Inc. Darius Adamczyk*,
   2022 U.S. Dist. LEXIS 80328 (D.N.J. May 3, 2022)..........................................5

*Karp v. Diebold Nixdorf, Inc.*,
   2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30, 2019)......................... 11, 12

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) ..............................................................7

*Montoya v. Herley Indus.*,
   2006 U.S. Dist. LEXIS 83343 (E.D. Pa. Nov. 14, 2006) ..................................11

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   2014 U.S. Dist. LEXIS 108001 (D. Del. Aug. 6, 2014).......................................6

*Smajlaj v. Brocade Communs. Sys.*,
   2006 U.S. Dist. LEXIS 97618 (N.D. Cal. Jan. 12, 2006)..................................10

*Vandevelde v. China Nat. Gas, Inc.*,
   277 F.R.D. 126 (D. Del. 2011) ........................................................................6

*Villare v. Abiomed, Inc.*,
   2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29, 2020) ...............................13

*Wagner v. Barrick Gold Corp.*,
   251 F.R.D. 112 (S.D.N.Y. 2008) ...................................................................13

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii) .................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)........................................................................1, 6

## I.     PRELIMINARY STATEMENT

KNS Holdings LLC DBPP UA Jan. 1, 2016 ("KNS") is a defined benefit pension plan controlled by and operated for the benefit of Kwan Fan and his real estate company. Between February 16, 2021 and November 15, 2021 (the "Class Period" in this action), KNS invested nearly $1 million purchasing over 60,000 shares of Butterfly Networks, Inc. stock. This investment ultimately resulted in a loss of almost $500,000. KNS now seeks to lead this class action lawsuit against Defendants to recover his losses and the losses sustained by the class. As the movant with the "largest financial interest" in the litigation and because KNS meets the typicality and adequacy requirements of Rule 23, the Court should grant its motion to be appointed as the lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").

Only two other shareholders—El Paso Firemen & Policemen's Pension Fund ("El Paso") and Brian Bennett ("Bennett")—oppose KNS's motion at this point. However, their arguments against KNS are meritless. The presumptive lead plaintiff can only be disqualified upon a showing of "proof" that he will not be able to adequately represent the interests of the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). El Paso disregards this in favor of opposing KNS's motion with nothing more than supposition and rhetorical questions aimed at creating as much confusion as possible around KNS's motion in hopes of giving the Court cause for concern. El Paso's

1

feigned confusion should not be credited. As represented initially, Kwan Fan is KNS's authorized representative as its trustee and administrator. KNS's plan agreement, filed herewith, show this to be true and demonstrate that nothing in KNS's motion is amiss. Further, nothing about KNS's purchases *during* the Class Period render it atypical of the other investors in the class. El Paso's argument on this point overlooks the reality that the purchases at issue were made *within* the Class period and account for *less than 2.5%* of KNS's overall losses, making the facts at bar materially different than those in the cases relied upon by El Paso.

Bennett, for his part, does not challenge KNS's financial interest in the litigation or its typicality and adequacy. Instead, he asks only to serve as a co-lead plaintiff to represent the claim under Section 14(a) of the Securities Exchange Act of 1934. Bennett's request, however, is contrary to the law and unnecessary. As demonstrated in the accompanying declaration and certification from Carl Metzger, KNS already has an additional named plaintiff who held Butterfly stock prior to and at the time of the merger vote to assist in the prosecution of the lawsuit.

## II.    ARGUMENT

### A.    KNS Triggered the Statutory Lead Plaintiff Presumption Under the PSLRA Because It Has the Largest Financial Interest in the Litigation and Satisfied Its *Prima Facie* Burden of Typicality and Adequacy.

The Third Circuit in *In re Cendant*, 264 F.3d 201 (3d Cir. 2001), held: "[T]he statutory structure and the legislative history suggest that *the court's initial inquiry*

2

***as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive***. . . . In conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted. In keeping with the statutory text, however, ***the court generally will not consider at this stage any arguments by other members of the putative class***; rather, such allegations should be dealt with in terms of assessing whether the lead plaintiff presumption has been rebutted rather than in terms of deciding whether it has been triggered." *Id.* at 264 (emphasis added).

KNS indisputably has the largest financial interest in the litigation. Financial interest is commonly evaluated by considering the number of shares purchased, total net funds expended, and approximate losses suffered. *Id*. at 262. As demonstrated in the following table, KNS's financial interest is larger than El Paso's and Bennett's under every factor:

| Movant | Gross Shares Purchased | Net Funds Expended | Approx. Loss |
|---|---|---|---|
| KNS | 61,897 | $914,116.92 | $497,083.34 |
| El Paso | 36,506 | $572,884.40 | $392,394.49 |
| Bennett | 3,885 | $73,425.21 | $47,200.83 |

*See* Dkt. Nos. 21-4 (KNS); 18-2 at 11 (Bennet); 19-2 at 10 (El Paso).

KNS also satisfies the typicality and adequacy requirements under Rule 23. "[I]n inquiring whether the movant has preliminarily satisfied the typicality

3

requirement, [courts] should consider whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *In re Cendant Corp. Litig.*, 264 F.3d at 265. "Adequacy" is demonstrated so long as the lead plaintiff movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Id.* Additionally, courts consider whether the movant has "negotiate[d] a reasonable retainer agreement." *Id.*

KNS's claims are typical of the class at large because, like other class members, it purchased Butterfly securities during the Class Period at prices artificially inflated by the alleged fraudulent statements at issue in this action. *See* Dkt. No. 21-3 (KNS's Certification); *see also* Dkt. No. 21-1 at 13-14 (KNS's claims "are based on the same legal theory and arise out of the same course of events as the other purported class members' claims."). KNS also meets the PSLRA's adequacy requirements. Mr. Fan, on behalf of KNS, interviewed several law firms and retained Levi & Korsinsky, LLP only after determining that it was experienced in the field of securities litigation. Moreover, KNS negotiated a favorable retainer agreement for the benefit of the class, including a cap on counsel's attorneys' fees that is well-below the one-third benchmark typically awarded within the Third Circuit. *See*, *e.g.*,

4

*Kanefsky v. Honeywell Int'l Inc. Darius Adamczyk*, 2022 U.S. Dist. LEXIS 80328, at *31-32 (D.N.J. May 3, 2022) (collecting cases). KNS also supported its opening motion with a declaration from its authorized representative, Mr. Fan, providing information about his educational and employment history. *See* Dkt. No. 21-6 (Declaration of Kwan Fan).

KNS's record on the motion triggered the statutory "presumption" of lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). While El Paso tries to argue otherwise, meeting the typicality and adequacy requirements at the lead plaintiff stage is necessarily a low burden, as it "would make little sense" if a movant was required to "'prove' that it satisfied Rule 23 in order to get the benefit of the lead plaintiff presumption, because that would create a situation in which the only way to rebut the presumption would be to 'disprove' something that the presumptively most adequate plaintiff had already 'proved.'" *See Cendant*, 264 F.3d at 264. Thus, courts hold that "[a] wide-ranging analysis under Rule 23 is not appropriate at this stage of the litigation and should be left for consideration of a motion for class certification." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 149 (D.N.J. 2000).

**B.    El Paso Cannot Use Speculation and Conjecture to Rebut KNS's Presumption of Lead Plaintiff.**

Once triggered, the PSLRA's statutory "presumption" of "most adequate plaintiff" can only be "rebutted" upon a showing of "proof" that KNS "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses

5

that render [KNS] incapable of adequately representing the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). "[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate[]' job. We . . . stress that the inquiry is not a relative one." *Cendant*, 264 F.3d at 268. "Mere speculation about a unique defense does not meet this standard. . . . The burden is on the [competing movants] to come forward with some ***proof*** that the unique defenses raised are legitimate issues that will likely be litigated at trial." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 2014 U.S. Dist. LEXIS 108001, at *17 (D. Del. Aug. 6, 2014) (emphasis added).[1] Neither El Paso nor Bennett produce the ***proof*** necessary to rebut KNS's presumption.

### i.     KNS's Plan Agreement Confirms that Kwan Fan Is Authorized to Act on behalf of KNS as Its Trustee and the Sole Managing Member of Its Administrator.

The case law is clear that speculation does not suffice for proof of inadequacy. *See Cendant*, 264 F.3d at 268. Notwithstanding, El Paso tries to rebut KNS's status as presumptive lead plaintiff with a slew of rhetorical questions designed to create

---

[1] *See also Doherty v. Pivotal Software, Inc.*, 2019 U.S. Dist. LEXIS 195360, at *18 (N.D. Cal. Nov. 8, 2019) ("The PSLRA requires 'proof' to overcome the presumption entitling the plaintiff with the largest financial interest in the litigation to appointment as lead plaintiff; speculative assertions are insufficient."); *accord Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 134 (D. Del. 2011); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

confusion where none should exist. *See* El Paso Opposition, Dkt. No. 28, pp. 6-7 (". . . a limited liability company, a trust, a bank account?", "Mr. Fan appears confused as to whether he is KNS' administrator, trustee, or both . . . Which is it?", and "What type of entity is KNS? Where does KNS' money come from? Who makes KNS' decisions?"). The Court should reject El Paso's "arguments." *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 537 (S.D.N.Y. 2015) (rejecting accusations of inadequacy as amounting to a "tempest in a teacup").

First, there should be no doubt as to KNS's "entity status." *See* El Paso Opposition, Dkt. No. 28, pp. 1, 6. KNS's motion and supporting documents specified accurately the name of the movant and denoted clearly that KNS is a defined benefit pension plan. *See*, *e.g.*, KNS Motion, Dkt. No. 21 (identifying movant as "KNS Holdings LLC *DBPP* UA Jan. 1, 2016") (emphasis added); KNS Brief, Dkt. No. 21-1 (same); KNS Certification, Dkt. No. 21-3 (same); Declaration of Kwan Fan, Dkt. No. 21-6 (same). Accordingly, El Paso's confusion over KNS's entity status lacks credibility.[2]

Second, El Paso's argument over KNS's certification also lacks merit. *See* El Paso Opposition, Dkt. No. 28 at 6-7. KNS correctly identified Kwan Fan as its

---

[2] The fact that El Paso itself is a defined benefit pension plan also undermines its supposed confusion. *See* Website - About the El Paso Firemen & Policemen's Pension Fund, available at https://elpasofireandpolice.org/index.php/about.

7

"trustee and/or administrator." *See* KNS Certification, Dkt. No. 21-3; *see also*

Supplemental Declaration of Kwan Fan dated May 8, 2022, filed herewith, ¶3 (". . .

I serve as KNS's plan administrator. I also serve as KNS's trustee."). KNS's plan

agreement confirms without doubt that Kwan Fan is, in fact, KNS's "Trustee."

Below is an excerpt from the "Execution Page":

*See* KNS Plan Agreement, p. 79 (signature block).[3]

The plan agreement further confirms that KNS Holdings, LLC, is the Plan

Sponsor and Plan Administrator and that Kwan Fan is its manager, as demonstrated

below:

---

[3] A copy of the KNS Plan Agreement is attached as Exhibit A to the accompanying
Supplemental Declaration of Kwan Fan dated May 8, 2022.



*See id.* at 10 (definitions), 79 (signature block).

Moreover, the plan agreement makes clear that Mr. Fan, as the Trustee, is authorized to take all action with respect to this lawsuit on behalf of KNS, as shown in the following excerpt:

> **Section 10.03   GENERAL INVESTMENT POWERS**
>
> In addition to all powers and authority under common law, statutory authority and other provisions of this Article, the Trustee shall have the following powers and authorities to be exercised in accordance with and subject to the provisions of Section 10.04 hereof:
>
> . . .
>
> (j)   To settle, compromise, or use any form of dispute resolution permitted by applicable law with respect to any claims, debts, or damages due or owing to or from the Trust Fund, to commence or defend suits or legal or administrative proceedings, and to represent the Plan and/or Trust Fund in all suits and legal and administrative proceedings (any claims involving a Participant cannot be subject to mandatory arbitration);

*See id.* at 62, 64, 70.

KNS's motion and supporting paperwork was accurate and complete, as confirmed by Mr. Fan's Supplemental Declaration filed herewith. *See* Supplemental Declaration of Kwan Fan at ¶3. Further, given that KNS was the entity that owned the securities at issue, the motion was correctly filed on KNS's behalf. *See id.* at ¶4 ("KNS purchased the securities at issue in this action. This is why the lead plaintiff motion at issue was filed on behalf of KNS and not be in my individual capacity."). Thus, El Paso's attempt to rely on *Spectranetics* and *Smajlaj* is misguided. *See* El

Paso Opposition, Dkt. No. 28, p. 7. In *Spectranetics*, a shareholder filed a motion for lead plaintiff in his individual capacity only and not on behalf of his limited liability company. The distinction was significant because the shareholder's "financial interest" in the litigation was attributable to trading losses sustained by the limited liability company. *See In re Spectranetics Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 54809, at *14-15 (D. Colo. June 15, 2009). That is *not* the case here where KNS's motion, again, clearly indicated that it was filed on behalf of KNS because KNS was the entity that purchased Butterfly securities. *See*, *e.g.*, KNS Motion, Dkt. No. 21 (identifying KNS as movant). Further, to the extent Mr. Fan refers to the motion as his own instead of KNS's, he is only speaking as "trustee" and "administrator" since KNS was the entity that sustained the trading losses in question. *See* KNS Certification, Dkt. No. 21-3 (identifying KNS's transactions in stock); Supplemental Declaration of Kwan Fan at ¶4.[4]

---

[4] El Paso's other authority is also easily distinguishable. In *Smajlaj*, a hedge fund with a "complicated and intricate structure" refused to prove its authority to litigate the class action. *Smajlaj v. Brocade Communs. Sys.*, 2006 U.S. Dist. LEXIS 97618, at *10-11 (N.D. Cal. Jan. 12, 2006). Unlike the hedge fund in *Smajlaj*, KNS has been forthright and transparent in its filings with the Court. KNS has also provided excerpts of its plan agreement to show that Mr. Fan is, in fact, authorized to litigate this matter on its behalf. The questions inserted by El Paso in its brief do not resemble those that existed in *Smajlaj* and, accordingly, do not give rise to the unique defenses that existed in that case.

### ii.     A Twelve-Year Old Bankruptcy Filing Is Irrelevant and Does Not Provide El Paso with Any Credible Basis for Questioning KNS's Ability to Represent the Class.

El Paso points to a 2010 bankruptcy filing in an attempt to legitimize the rhetorical questions presented in its opposition brief. *See* El Paso Opposition, Dkt. No. 28, pp. 7-8. Bankruptcy, however, has no relevance to the issue bar. "[B]ankruptcy is not a crime, is not evidence of misconduct, and does not end one's ability to earn an income." *In re Groupon Secs. Litig.*, 2012 U.S. Dist. LEXIS 123899, at *13-14 (N.D. Ill. Aug. 28, 2012) (adequacy not called into question by multiple DUI's and a bankruptcy filing). Filing for bankruptcy does not "represent the degree of serious misconduct that would require the presumptive lead plaintiff's candidacy to be rejected at this stage in the absence of any specific connection between the types of violations claimed and the fraud alleged here." *Montoya v. Herley Indus.*, 2006 U.S. Dist. LEXIS 83343, at *7 (E.D. Pa. Nov. 14, 2006). Accordingly, the mere existence of the bankruptcy does not constitute "proof" of anything, let alone proof that KNS is inadequate or otherwise incapable of adequately protecting the class's interests.

El Paso's authority on this point presents markedly different facts and does not support denying KNS's motion. Namely, in *Karp v. Diebold Nixdorf, Inc.*, 2019 U.S. Dist. LEXIS 188670, at *14-15 (S.D.N.Y. Oct. 30, 2019), the court denied the University of Puerto Rico Retirement System's motion for lead plaintiff because of

11

the Commonwealth of Puerto Rico pending bankruptcy and "the destruction caused by Hurricane Maria and political instability stemming from governor Ricardo Rossello's resignation." These then-existing issues had caused the retirement system to "receive[] under half of its expected contribution" which led the court to conclude that its "funding constraints" were "grow[ing] more severe" and, therefore, likely to "impede [the retirement system's] ability to manage [the] litigation." *Id*. Thus, unlike a stale bankruptcy from over 12 years ago, the financial circumstances affecting the movant in *Karp* were current and "non-speculative." *Id*. Without anything analogous in the matter at bar, El Paso cannot credibly rely on *Karp* to disqualify KNS.[5]

### iii. KNS's Intra-Class Period Purchases on November 15, 2021, Do Not Make It Atypical or Inadequate.

El Paso's attack against KNS for purchasing Butterfly shares on November 15, 2021, lacks merit. *See* El Paso Opposition, Dkt. No. 28, pp. 9-12. The Class Period in this action is defined as: ". . . between February 16, 2021 and November 15, 2021, both dates inclusive." *See* Complaint, Dkt. No. 1, ¶1. Only now, well-after the 60-day deadline for filing lead plaintiff motions, does El Paso effectively seek to

---

[5] El Paso also misplaces reliance on *Johnson v. Geico Gas Co.*, 673 F. Supp. 2d 255, 279 (D. Del. 2009), where the movant had lied under oath during deposition about his involvement in "at least eleven other civil and criminal cases," including a "mortgage action, replevin action, bankruptcy petition, and criminal charge for writing a bad check in excess of $500," which "raise[d] questions about [his] financial dealings." The perjury in *Johnson* is not present here and materially different than the bankruptcy filing in question.

amend the Class Period and shorten it by a day so that it can accuse KNS of being atypical. This maneuver is contrary to the law and smacks of "gamesmanship." *See Villare v. Abiomed, Inc.*, 2020 U.S. Dist. LEXIS 114684, at *11-13 (S.D.N.Y. June 29, 2020) (rejecting attempt to alter class period after 60-day deadline).

In any event, KNS's purchases do not render it atypical or inadequate. *See In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) ("The post-disclosure purchase of the additional shares therefore will not necessarily present individual issues of reliance that render the investor atypical or inadequate to represent class members who did not purchase such additional shares.") (quoting *In re Salomon Analyst Metromedia*, 236 F.R.D. 208, 216 (S.D.N.Y. 2006)). Shareholders often purchase shares after a corrective disclosure, as it allows them to "average down" their cost basis. *See In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480, 488 (S.D.N.Y. 2011) ("the strategy of cost averaging down is a common investment strategy that decreases the average cost of an investment. It does not in any way implicate a shareholder's initial decision to purchase stock."); *Wagner v. Barrick Gold Corp.*, 251 F.R.D. 112, 117 (S.D.N.Y. 2008) (noting that cost averaging is a common investment strategy).

El Paso's authority on this point supports KNS's argument. For example, in *In re DVI Inc. Securities Litigation*, 249 F.R.D. 196, 204 n.13 (E.D. Pa. 2008), the court explained that post-disclosure purchases only become an issue when they

13

represent a "disproportionately large percentage" of the investment. KNS's purchases on November 15 are not only *within* the defined class period but also represent less than 2.5% of KNS's alleged loss. *See* KNS Loss Chart, Dkt. No. 21-4 (showing $12,164.62 out of $497,083.34 in losses from trades on November 15). El Paso's other authority is also distinguishable because the courts were presented with *evidence* of atypical trading patterns or non-reliance on the alleged fraudulent statements.[6]

### C.    KNS Can Represent the Entire Class Without a Co-Lead Plaintiff.

Bennett's only argument against KNS's motion is that he should be appointed "co-lead" for the benefit of pursuing the alleged Section 14(a) claim. Bennett Opp., Dkt. No. 27, pp. 3-4. "The PSLRA does not require that the lead Plaintiffs have standing to sue on every available cause of action." *In re PMA Capital Corp. Sec.*

---

[6] *See*, *e.g.*, *Faris v. Longtop Fin. Techs. Ltd.*, 2011 U.S. Dist. LEXIS 112970, at *26-28 (S.D.N.Y. Oct. 4, 2011) (evidence that shareholders "purchased *all* of their shares" after corrective disclosure gave rise to "unique defense"); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 & n.4 (E.D. Pa. 2003) (denying motion for class certification because proposed representative purchased stock after disclosure of alleged fraud and evidence showed he was a "day trader" who omitted transaction information on sworn certification); *In re Snap Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 88379, at *6-7 (C.D. Cal. Apr. 1, 2019) (shareholder purchased 60% of his shares after partial corrective disclosure). *Snap* presented additional complications given that the court was selecting a new lead plaintiff to substitute the one that it had initially selected. The movant who purchased 15% of its investment after the partial corrective disclosure also sold *all* of its stock prior to the end of the class period and faced standing issues due to its complicated organizational structure. *Id*. at *9-10.

*Litig.*, 2005 U.S. Dist. LEXIS 15696, at \*58 (E.D. Pa. July 27, 2005) (citing *Hevesi v. Citigroup, Inc.,* 366 F.3d 70, 82-83 (2d Cir. 2004) (refusing to adopt a per se rule that district courts must choose a lead plaintiff with standing to sue on every available cause of action)); *see also Church v. Glencore PLC*, 2018 U.S. Dist. LEXIS 210229, at \*5 n.2 (D.N.J. Dec. 12, 2018) (refusing to appoint a co-lead plaintiff and appointing lead plaintiff movant that "has the largest financial interest, notwithstanding the fact that he only purchased" one type of security, which was different than that purchased by the rejected movant).

Notwithstanding, to the extent additional representation becomes necessary, the lead plaintiff can remedy such issues by relying on named plaintiffs. *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2012 U.S. Dist. LEXIS 53878, at \*22-23 (S.D.N.Y. Apr. 16, 2012) ("the PSLRA vests lead plaintiffs with control over the litigation as a whole, including authority to name additional class plaintiffs to resolve standing concerns"). In this event, KNS is ready, willing and able to include an additional named plaintiff (Carl Metzger) for the benefit of representing the class (particularly, for the Section 14(a) claims). *See* Declaration of Carl Metzger dated May 9, 2022 (filed herewith); Certification of Carl Metzger dated May 9, 2022 (filed herewith).

## III.    CONCLUSION

KNS respectfully requests that the Court grant its motion in its entirety.

15

Dated: May 9, 2022                    Respectfully submitted,

                                      **LEVI & KORSINSKY, LLP**

                                      */s/ Adam M. Apton*
                                      Adam M. Apton
                                      55 Broadway, 10th Floor
                                      New York, New York 10006
                                      Tel.: (212) 363-7500
                                      Fax: (212) 363-7171
                                      Email: aapton@zlk.com

                                      *Counsel for KNS Holdings LLC
                                      DBPP UA Jan. 1, 2016 and
                                      [Proposed] Lead Counsel for the
                                      Class*

## CERTIFICATE OF SERVICE

I, Adam M. Apton, hereby certify that on May 9, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

/s/Adam M. Apton
Adam M. Apton

17