**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Counsel for KNS Holdings LLC DBPP UA*
*Jan. 1, 2016 and Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRAIG M. ROSE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BUTTERFLY NETWORK, INC. F/K/A LONGVIEW ACQUISITION CORP., TODD M. FRUCHTERMAN, STEPHANIE FIELDING, JONATHAN M. ROTHBERG, JOHN RODIN, LARRY ROBBINS, MARK HOROWITZ, WESTLEY MOORE, DEREK CRIBBS, and RANDY SIMPSON,<br><br>Defendants. | Case No. 2:22-cv-00854-JXN-JBC<br><br>**SUPPLEMENTAL DECLARATION OF KWAN FAN IN SUPPORT OF KNS HOLDINGS LLC DBPP UA JAN. 1, 2016'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>**MOTION DATE: May 16, 2022** |

I, Kwan Fan, hereby declare as follows:

1. I respectfully submit this Supplemental Declaration in support of KNS Holdings LLC DBPP UA Jan. 1, 2016 ("KNS")'s motion for appointment as Lead Plaintiff in the above-captioned securities class action. I have personal knowledge about the facts stated herein and could competently testify to them if called to do so.

2. KNS is a defined benefit pension plan for my real estate company, KS Holdings LLC d/b/a KNS Holdings LLC ("KNS Holdings"). I am the sole managing member of KNS Holdings. KNS Holdings is the entity through which I operate the real estate business referenced in my previous declaration.

3. KNS Holdings is KNS's plan sponsor and I serve as KNS's plan administrator. I also serve as KNS's trustee. Attached hereto as Exhibit A is a true and accurate excerpt of KNS's plan agreement.

4. KNS purchased the securities at issue in this action. This is why the lead plaintiff motion at issue was filed on behalf of KNS and not me in my individual capacity. However, if KNS is appointed as lead plaintiff, I will be its authorized representative during the course of the litigation.

I declare under penalty of perjury that the foregoing statements are true and

executed May 8th 2022.

Kwan Fan

2

# EXHIBIT A

**KNS HOLDINGS, LLC**
**DEFINED BENEFIT PENSION PLAN**

Established as of 01/01/2016
Amended and Restated as of 01/01/2019

Case 2:22-cv-00854-MEF-JBC   Document 32-1   Filed 05/09/22   Page 4 of 17 PageID: 752

KNS HOLDINGS, LLC
DEFINED BENEFIT PENSION PLAN

TABLE OF CONTENTS

PREAMBLE ........................................................................................................................... 1

ARTICLE 1 INTRODUCTION ............................................................................................ 2
    Section 1.01  Plan and Trust ............................................................................................ 2
    Section 1.02  Application of Amended and Restated Plan and Trust .............................. 2

ARTICLE 2 DEFINITIONS .................................................................................................. 3

ARTICLE 3 PARTICIPATION ........................................................................................... 17
    Section 3.01  Commencement of Participation ............................................................. 17
    Section 3.02  Transfers ................................................................................................. 17
    Section 3.03  Termination and Rehires ......................................................................... 17
    Section 3.04  Limitations on Exclusions ...................................................................... 17
    Section 3.05  Procedures for Admission ...................................................................... 18

ARTICLE 4 ACCRUED BENEFIT ..................................................................................... 19
    Section 4.01  Benefit at Normal Retirement Age ......................................................... 19
    Section 4.02  Minimum and Maximum Benefits ......................................................... 20
    Section 4.03  Pre-ERISA Accruals ............................................................................... 20
    Section 4.04  Military Service ...................................................................................... 20

ARTICLE 5 LIMITATIONS ON BENEFITS ..................................................................... 21
    Section 5.01  Maximum Annual Benefit ...................................................................... 21
    Section 5.02  Prior Limitations .................................................................................... 21
    Section 5.03  Definitions .............................................................................................. 21
    Section 5.04  Other Rules ............................................................................................. 27
    Section 5.05  Benefit Restrictions (Prohibited Payments) and Benefit Accruals for Single Employer Plans ... 28

ARTICLE 6 VESTING ........................................................................................................ 34
    Section 6.01  Pension Benefits ..................................................................................... 34
    Section 6.02  Other Contributions and Segregated Account ....................................... 34
    Section 6.03  Forfeitures .............................................................................................. 34

ARTICLE 7 DISTRIBUTIONS ........................................................................................... 36
    Section 7.01  Commencement of Distributions ............................................................ 36
    Section 7.02  Form of Benefit ...................................................................................... 36
    Section 7.03  Cash-Out of Small Benefits ................................................................... 39
    Section 7.04  Joint and Survivor Annuities ................................................................. 39
    Section 7.05  Restrictions on Deferral ......................................................................... 42
    Section 7.06  Elections ................................................................................................. 42
    Section 7.07  Annuity Contracts .................................................................................. 42
    Section 7.08  Pre-Termination Restrictions ................................................................. 42
    Section 7.09  Direct Rollovers ..................................................................................... 43
    Section 7.10  Minor, Legally Incompetent or Missing Payee ..................................... 44
    Section 7.11  Offset ...................................................................................................... 45
    Section 7.12  Retroactive Annuity Starting Date ......................................................... 45
    Section 7.13  Suspension - Rehires .............................................................................. 45
    Section 7.14  Segregated Account ............................................................................... 45
    Section 7.15  Minimum Distribution Requirements ..................................................... 46

ARTICLE 8 IN-SERVICE DISTRIBUTIONS AND LOANS ............................................. 53

Section 8.01  In-service Distributions ...................................................................................... 53
Section 8.02  Loans ................................................................................................................... 53

ARTICLE 9 CONTRIBUTIONS, INVESTMENT AND VALUATION OF TRUST FUND ............................ 55
Section 9.01  Contributions ...................................................................................................... 55
Section 9.02  Arrangements Adopted By More Than One Employer ....................................... 55
Section 9.03  Insurance Contracts ........................................................................................... 57
Section 9.04  Investment of Assets ........................................................................................... 58
Section 9.05  Qualifying Employer Investments ...................................................................... 58
Section 9.06  Life Insurance ..................................................................................................... 58

ARTICLE 10 TRUST FUND ................................................................................................................. 59
Section 10.01  Trust Fund ......................................................................................................... 59
Section 10.02  Duties of the Trustee ........................................................................................ 60
Section 10.03  General Investment Powers .............................................................................. 61
Section 10.04  Other Investment Powers .................................................................................. 63
Section 10.05  Instructions ....................................................................................................... 64
Section 10.06  Investment of the Fund ..................................................................................... 65
Section 10.07  Compensation and Indemnification .................................................................. 66
Section 10.08  Resignation and Removal ................................................................................. 66

ARTICLE 11 TOP-HEAVY RULES ....................................................................................................... 67
Section 11.01  Top-Heavy Status .............................................................................................. 67
Section 11.02  Minimum Benefit .............................................................................................. 67
Section 11.03  Minimum Vesting .............................................................................................. 68

ARTICLE 12 PLAN ADMINISTRATION ............................................................................................... 69
Section 12.01  Plan Administrator ........................................................................................... 69
Section 12.02  Investment Fiduciary ....................................................................................... 70
Section 12.03  Compensation of Plan Administrator and Investment Fiduciary ...................... 70
Section 12.04  Plan Expenses ................................................................................................... 70
Section 12.05  Allocation of Fiduciary Responsibility ............................................................ 70
Section 12.06  Indemnification ................................................................................................. 70
Section 12.07  Claims Procedures ............................................................................................ 71
Section 12.08  Written Communication .................................................................................... 72

ARTICLE 13 AMENDMENT, MERGER AND TERMINATION ................................................................. 73
Section 13.01  Amendment ....................................................................................................... 73
Section 13.02  Merger and Transfer ......................................................................................... 74
Section 13.03  Termination ....................................................................................................... 75

ARTICLE 14 MISCELLANEOUS .......................................................................................................... 76
Section 14.01  Nonalienation of Benefits ................................................................................. 76
Section 14.02  Rights of Alternate Payees ............................................................................... 76
Section 14.03  No Right to Employment ................................................................................... 77
Section 14.04  No Right to Trust Assets .................................................................................... 77
Section 14.05  Governing Law .................................................................................................. 77
Section 14.06  Severability of Provisions ................................................................................. 77
Section 14.07  Headings and Captions ..................................................................................... 77
Section 14.08  Gender and Number .......................................................................................... 77
Section 14.09  Disaster Relief .................................................................................................. 77
Section 14.10  Advisory Letter ................................................................................................. 78

EXECUTION PAGE ............................................................................................................................. 79

QUALIFIED PLANS' DISASTER RELIEF INTERIM AMENDMENT ......................................................... 80

**PREAMBLE**

WHEREAS, KNS Holdings, LLC, a Arizona Limited Liability Company (the "Plan Sponsor"), adopted a qualified retirement plan for the benefit of its eligible employees, effective 01/01/2016;

NOW, THEREFORE, the Plan Sponsor hereby amends and restates the KNS Holdings, LLC Defined Benefit Pension Plan, effective as of 01/01/2019 (except as otherwise noted) pursuant to the following provisions:

(a)    Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer. These hours will be credited to the Employee for the computation period in which the duties are performed.

(b)    Each hour for which an Employee is paid, or entitled to payment, by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. No more than 501 hours of service will be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period). Hours under this paragraph will be calculated and credited pursuant to DOL Reg. section 2530.200b-2, which is incorporated herein by this reference.

(c)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer. The same hours of service will not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c). These hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

Solely for purposes of determining whether a One-Year Break in Service has occurred, an individual who is absent from work for maternity or paternity reasons shall receive credit for the hours of service which would otherwise have been credited to such individual but for such absence, or in any case in which such hours cannot be determined, 8 hours of service per day of such absence. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the individual, (2) by reason of a birth of a child of the individual, (3) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (4) for purposes of caring for such child for a period beginning immediately following such birth or placement. The hours of service credited under this paragraph shall be credited (1) in the computation period in which the absence begins if the crediting is necessary to prevent a break in service in that period, or (2) in all other cases, in the following computation period.

Notwithstanding the foregoing, for determining service under the elapsed time method an Hour of Service means each hour for which an Employee is paid or entitled to payment for the performance of duties for the Employer.

If the Employer is a member of an affiliated service group (under Code section 414(m)), a controlled group of corporations (under Code section 414(b)), a group of trades or businesses under common control (under Code section 414(c)), or any other entity required to be aggregated with the Employer pursuant to Code section 414(o), service will be credited for any employment with such groups during the time the Employer is a member of the applicable group. Service will also be credited for any individual considered an Employee for purposes of this Plan under Code sections 414(n) or 414(o).

If the Employer maintains the plan of a predecessor employer, service with such employer will be treated as service for the Employer.

Service with respect to qualified military service shall be credited in accordance with Code section 414(u) and service shall also be determined to the extent required by the Family and Medical Leave Act of 1993.

Investment Fiduciary means
    Trustee. The fiduciary shall be subject to standards of conduct as prescribed under ERISA.

Investment Funds means
    the funds in which the Trust Fund is invested.

8

<u>Normal Retirement Date</u> means
the first day of the calendar month coincident or next following Normal Retirement Age.

<u>One-Year Break in Service</u> means
for purposes of determining eligibility service, an Eligibility Computation Period or, for purposes of determining a Year of Vesting Service, a Vesting Computation Period during which an Employee is credited with 500 or fewer Hours of Service.

<u>One-Year Period of Severance</u> means
a Period of Severance of at least 12 consecutive months. In the case of an individual who is absent from work for maternity or paternity reasons, the 12-consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a One-Year Period of Severance. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the individual, (2) by reason of the birth of a child of the individual, (3) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (4) for purposes of caring for such child for a period beginning immediately following such birth or placement.

<u>Participant</u> means
an Eligible Employee who participates in the Plan in accordance with Article 3.

<u>Period of Severance</u> means
a continuous period of time during which the Employee does not perform an Hour of Service for the Employer. Such period begins on the date the Employee retires, dies, quits or is discharged, or if earlier, the 12 month anniversary of the date on which the Employee was otherwise first absent from service.

<u>Permissive Aggregation Group</u> means
the Required Aggregation Group of plans, plus any other plan or plans of the Employer which, when considered as a group with the Required Aggregation Group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

<u>Plan Administrator</u> means
the Plan Sponsor designated pursuant to Section 12.01. The Plan Administrator is a "named fiduciary" within the meaning of ERISA section 402(a)(2).

<u>Plan Sponsor</u> means
KNS Holdings, LLC and any successor thereto.

<u>Plan Year</u> means
the 12-consecutive month period ending on 12/31.

<u>Post Severance Compensation</u> means
compensation paid by the later of: (1) 2-1/2 months after an Employee's severance from employment with the Company, or (2) the end of the year that includes the date of the Employee's severance from employment with the Company if: (a) the payment is for unused accrued bona fide sick, vacation, or other leave that the employee would have been able to use if employment had continued; or (b) the payment is received by the employee pursuant to a nonqualified unfunded deferred compensation plan and would have been paid at the same time if employment had continued, but only to the extent includible in gross income.

<u>Present Value</u> means
for purposes of Code section 416, a benefit of equivalent value and shall be based on an interest rate of 5% and the 1983 IAF mortality table for computing the Top-Heavy Ratio.

the Determination Date(s)) (5-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or disability), determined in accordance with Code section 416 and the regulations thereunder.

(b)    If the employer maintains one or more defined benefit plans and the employer maintains or has maintained one or more defined contribution plans (including any simplified employee pension) which during the 5-year period ending on the Determination Date(s) has or has had any account balances, the Top-Heavy Ratio for any Required or Permissive Aggregation Group as appropriate is a fraction, the numerator of which is the sum of the present value of accrued benefits under the aggregated defined benefit plan or plans for all Key Employees, determined in accordance with (a) above, and the sum of account balances under the aggregated defined contribution plan or plans for all Key Employees as of the Determination Date(s), and the denominator of which is the sum of the present value of accrued benefits under the defined benefit plan or plans for all participants, determined in accordance with (a) above, and the account balances under the aggregated defined contribution plan or plans for all participants as of the Determination Date(s), all determined in accordance with Code section 416 and the regulations thereunder. The account balances under a defined contribution plan in both the numerator and denominator of the Top-Heavy Ratio are increased for any distribution of an account balance made in the 1-year period ending on the Determination Date (5-year period ending on the Determination Date in the case of a distribution made for a reason other than severance from employment, death or disability).

(c)    For purposes of (a) and (b) above the value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that falls within or ends with the 12-month period ending on the Determination Date, except as provided in Code section 416 and the regulations thereunder for the first and second plan years of a defined benefit plan. The account balances and accrued benefits of a participant (1) who is not a Key Employee but who was a Key Employee in a prior year, or (2) who has not been credited with at least one hour of service with any employer maintaining the plan at any time during the 1-year period ending on the Determination Date will be disregarded. The calculation of the Top-Heavy Ratio, and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code section 416 and the regulations thereunder. Deductible employee contributions will not be taken into account for purposes of computing the Top-Heavy Ratio. When aggregating plans the value of account balances and accrued benefits will be calculated with reference to the Determination Dates that fall within the same calendar year. In the case of two or more defined benefit plans which are being tested for determining whether an aggregation group is top-heavy, the actuarial assumptions used for all plans within the group must be the same.

The accrued benefit of a participant other than a Key Employee shall be determined under (a) the method, if any, that uniformly applies for accrual purposes under all defined benefit plans maintained by the employer, or (b) if there is no such method, as if such benefit accrued not more rapidly than the slowest accrual rate permitted under the fractional rule of Code section 411(b)(1)(C).

Trust Fund means
    all of the assets of the Plan held by the Trustee pursuant to Article 10 or held by an insurance company pursuant to section 403 of ERISA.

Trustee means
    the person or persons designated by the Plan Sponsor to serve as the Trustee of the Trust Fund.

Valuation Date (applies only for Segregated Accounts) means
    the last day of the Plan Year.

14

Plan Administrator. A Participant may examine only those individual account records pertaining directly to his or her Segregated Account, if any.

(e)    Accounting. The Trustee shall file with the Plan Administrator a written account of the administration of the Trust Fund showing all transactions effected by the Trustee subsequent to the period covered by the last preceding account and all property held at the end of the accounting period. The Trustee shall use its best effort to file such written account within ninety (90) days, but not later than one hundred twenty (120) days after the end of each Plan Year. Upon approval of such accounting by the Plan Administrator, neither the Company nor the Plan Administrator shall be entitled to any further accounting by the Trustee. The Plan Administrator may approve such accounting by written notice of approval delivered to the Trustee or by failure to express objection to such accounting in writing delivered to the Trustee within six (6) months from the date on which the accounting is delivered to the Plan Administrator.

(f)    Participant Eligibility. The Trustee shall not be required to determine the facts concerning the eligibility of any Participant to participate in the Plan, the amount of benefits payable to any Participant or Beneficiary under the Plan, or the date or method of payment or disbursement. The Trustee shall be fully entitled to rely in good faith solely upon the written advice and directions of the Plan Administrator as to any such question of fact.

(g)    Indicia of Ownership. The Trustee shall not hold the indicia of ownership of any assets of the Trust Fund outside of the jurisdiction of the District Courts of the United States, unless in compliance with section 404(b) of ERISA and regulations thereunder.

(h)    Notice. The Trustee shall provide the Company with advance notice of any legal actions the Trustee may take with respect to the Plan and Trust and shall promptly notify the Company of any claim against the Plan and Trust.

(i)    Other Fiduciaries. The Trustee shall not be responsible for the acts or omissions of any other persons except as may be required by ERISA section 405.

Section 10.03    GENERAL INVESTMENT POWERS

In addition to all powers and authority under common law, statutory authority and other provisions of this Article, the Trustee shall have the following powers and authorities to be exercised in accordance with and subject to the provisions of Section 10.04 hereof:

(a)    Invest and reinvest the Trust Fund in any property, real, personal or mixed, wherever situated, and whether situated, and whether or not productive of income or consisting of wasting assets, including, without limitation, common and preferred stock, bonds, notes, debentures, options, mutual funds, leaseholds, mortgages (including without limitation, any collective or part interest in any bond and mortgage or note and mortgage), certificates of deposit, and oil, mineral or gas properties, royalties, interests or rights (including equipment pertaining thereto), without being limited to the classes of property in which trustees are authorized by law or any rule of court to invest trust funds and without regard to the proportion any such property may bear to the entire amount of the Trust Fund;

(b)    Hold property in nominee name, in bearer form, or in book entry form, in a clearinghouse corporation or in a depository, so long as the Trustee's records clearly indicate that the assets held are a part of the Trust Fund and such property is held in conformance with DOL Reg. section 2550-403a-1(b);

(c)    Collect income payable to and distributions due to the Trust Fund and sign on behalf of the Trust any declarations, affidavits, certificates of ownership and other documents required to collect income and

61

principal payments, including but not limited to, tax reclamations, rebates and other withheld amounts;

(d)     To sell, exchange, convey, transfer, grant options to purchase, or otherwise dispose of any securities or other property held by the Trustee. No person dealing with the Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency, or propriety of any such sale or other disposition;

(e)     Pursuant to the terms of Section 10.06, to vote upon any stocks, bonds, or other securities; to give general or special proxies or powers of attorney with or without power of substitution; to exercise any conversion privileges, subscription rights or other options, and to make any payments incidental thereto; to oppose, or to consent to, or otherwise participate in, corporate reorganizations or other changes affecting corporate securities, and to delegate discretionary powers, and to pay any assessments or charges in connection therewith; and generally to exercise any of the powers of an owner with respect to stocks, bonds, securities, or other property;

(f)     Take all action necessary to pay for authorized transactions or make authorized distributions, including exercising the power to borrow or raise moneys from any lender, upon such terms and conditions as are necessary to settle such transactions or distributions;

(g)     To keep such portion of the Trust Fund uninvested in cash or cash balances as the Trustee may, from time to time, deem to be in the best interests of the Plan, without liability for interest thereon;

(h)     To accept and retain for such time as the Trustee may deem advisable any securities or other property received or acquired as Trustee hereunder, whether or not such securities or other property would normally be purchased as investments hereunder;

(i)     To make, execute, acknowledge, and deliver any and all documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(j)     To settle, compromise, or use any form of dispute resolution permitted by applicable law with respect to any claims, debts, or damages due or owing to or from the Trust Fund, to commence or defend suits or legal or administrative proceedings, and to represent the Plan and/or Trust Fund in all suits and legal and administrative proceedings (any claims involving a Participant cannot be subject to mandatory arbitration);

(k)     To invest in Treasury Bills and other forms of United States government obligations;

(l)     Deposit cash in accounts in the banking department of the Trustee or an affiliated banking organization;

(m)     To deposit monies in federally insured savings accounts or certificates of deposit in banks or savings and loan associations;

(n)     Invest and reinvest all or any portion of the Trust Fund collectively with funds of other retirement plan trusts exempt from tax under Code section 501(a), including, without limitation, the power to invest collectively with such other funds through the medium of one or more common, collective or commingled trust funds which have been or may hereafter be operated by the Trustee, the instrument or instruments establishing such trust fund or funds, as amended from time to time, being made part of this Trust so long as any portion of the Trust Fund shall be invested through the medium thereof;

(o)  Sell, either at public or private sale, option to sell, mortgage, lease for a term of years less than or continuing beyond the possible date of the termination of the Trust created hereunder, partition or exchange any real property which may from time to time constitute a portion of the Trust Fund, for such prices and upon such terms as it may deem best, and to make, execute and deliver to the purchasers thereof good and sufficient deeds of conveyance therefor and all assignments, transfers and other legal instruments, either necessary or convenient for the passing of the title and ownership thereof to the purchaser, free and discharged of all trusts and without liability on the part of such purchasers to see to the proper application of the purchase price;

(p)  Repair, alter, improve or demolish any buildings which may be on any real estate forming part of the Trust Fund or to erect entirely new structures thereon;

(q)  Renew, extend or participate in the renewal or extension of any mortgage, upon such terms as may be deemed advisable, and to agree to a reduction in the rate of interest on any mortgage or to any other modification or change in the terms of any mortgage or of any guarantee pertaining thereto, in any manner and to any extent that may be deemed advisable for the protection of the Trust Fund or the preservation of the value of the investment; to waive any default, whether in the performance of any covenant or condition of any mortgage or in the performance of any guarantee, or to enforce any such default in such manner and to such extent as may be deemed advisable; to exercise and enforce any and all rights of foreclosure, to bid on property in foreclosure, to take a deed in lieu of foreclosure with or without paying a consideration therefor, and in connection therewith to release the obligation on the bond or note secured by the mortgage; and to exercise and enforce in any action, suit or proceeding at law or in equity any rights or remedies in respect to any mortgage or guarantee;

(r)  Purchase any authorized investment at a premium or at a discount;

(s)  Establish, manage and administer a securities lending program on behalf of the Trust Fund, pursuant to which the Trustee shall have authority to cause any or all securities held in the Trust Fund to be lent to such one or more borrowers as the Trustee shall determine, in accordance with Prohibited Transaction Class Exemption 81-6. The Investment Fiduciary shall enter into a written agreement with the Trustee setting forth the terms and conditions of the Trustee's appointment, including without limitation the compensation to be paid to the Trustee for its services with respect to such securities lending program, in accordance with Prohibited Transaction Class Exemption 82-63;

(t)  To purchase any annuity contract pursuant to Article 7; and

(u)  To do all such acts and exercise all such rights and privileges, although not specifically mentioned herein, as the Trustee may deem necessary to carry out the purposes of the Plan.

Section 10.04   OTHER INVESTMENT POWERS

(a)  Requirement for Preapproval. The powers granted the Trustee under Section 10.03 shall be exercised by the Trustee upon the written direction from the Investment Fiduciary pursuant to Sections 10.05 and 10.06. Any written direction of the Investment Fiduciary may be of a continuing nature, but may be revoked in writing by the Investment Fiduciary at any time. The Trustee shall comply with any direction as promptly as possible, provided it does not contravene the terms of the Plan or the provision of any applicable law. The Investment Fiduciary, by written direction, may require the Trustee to obtain written approval of the Investment Fiduciary before exercising such of its powers as may be specified in such direction. Any such direction may be of a continuing nature or otherwise and may be revoked in writing by the Investment Fiduciary at any time. The Trustee shall not be responsible for any loss that may result from the failure or refusal of the Investment Fiduciary to give any such required direction or approval.

63

(b)     Prohibited Transactions. The Trustee shall not engage in any prohibited transaction within the meaning of the Code and ERISA.

(c)     Legal Actions. The Trustee is authorized to execute all necessary receipts and releases and shall be under the duty to make efforts to collect such sums as may appear to be due (except contributions hereunder); provided, however, that the Trustee shall not be required to institute suit or maintain any litigation to collect the proceeds of any asset unless it has been indemnified to its satisfaction for counsel fees, costs, disbursements and all other expenses and liabilities to which it may in its judgment be subjected by such action. Notwithstanding anything to the contrary herein contained, the Trustee is authorized to compromise and adjust claims arising out of any asset held in the Trust Fund upon such terms and conditions as the Trustee may deem just, and the action so taken by the Trustee shall be binding and conclusive upon all persons interested in the Trust Fund.

(d)     Retention of Advisors. The Trustee, with the consent of the Investment Fiduciary, may retain the services of investment advisors to invest and reinvest the assets of the Trust Fund, as well as employ such legal, actuarial, medical, accounting, clerical and other assistance as may be required in carrying out the provisions of the Plan. The Trustee may also appoint custodians, subcustodians or subtrustees as to part or all of the Trust Fund.

## Section 10.05    INSTRUCTIONS

(a)     Reliance on Instructions. Whenever the Trustee is permitted or required to act upon the directions or instructions of the Investment Fiduciary, Plan Administrator or Company, the Trustee shall be entitled to act in good faith upon any written communication signed by any person or agent designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company. Such person or agent shall be so designated either under the provisions of the Plan or in writing by the Company and their authority shall continue until revoked in writing. The Trustee shall incur no liability for failure to act in good faith on such person's or agent's instructions or orders without written communication, and the Trustee shall be fully protected in all actions taken in good faith in reliance upon any instructions, directions, certifications and communications believed to be genuine and to have been signed or communicated by the proper person.

(b)     Designation of Agent.
        (1)     Company. The Company shall notify the Trustee in writing as to the appointment, removal or resignation of any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company. After such notification, the Trustee shall be fully protected in acting in good faith upon the directions of, or dealing with, any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company until it receives notice to the contrary. The Trustee shall have no duty to inquire into the qualifications of any person designated to act as or on behalf of the Investment Fiduciary, Plan Administrator or Company.
        (2)     Trustee. If there is more than one Trustee, the Trustees may designate one or more of the Trustees to act on behalf of the Trustees. Such designated Trustee shall be authorized to take any and all actions and execute and deliver such documents as may be necessary or appropriate.

(c)     Procedures. The Trustee may adopt such rules and procedures as it deems necessary, desirable, or appropriate including, but not limited to: (i) taking action with or without formal meetings; and (ii) in the event that there is more than one Trustee, a procedure specifying whether action may be taken by a less than unanimous vote.

(d)     Payment of Benefits. The Trustee shall pay benefits and expenses from the Trust Fund only upon the written direction of the Plan Administrator. The Trustee shall be fully entitled to rely in good faith on

64

such directions furnished by the Plan Administrator, and shall be under no duty to ascertain whether the directions are in accordance with the provisions of the Plan.

Section 10.06    INVESTMENT OF THE FUND

(a)    Investment Funds. The Investment Fiduciary shall have the exclusive authority and discretion to select the Investment Funds available for investment under the Plan. In making such selection, the Investment Fiduciary shall use the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. Subject to the first sentence of Subsection (b) below, the available investments under the Plan shall be sufficiently diversified so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. The Investment Fiduciary shall notify the Trustee in writing of the selection of the Investment Funds currently available for investment under the Plan, and any changes thereto.

(b)    Participant Self-Direction. Each Participant shall not have the right, in accordance with the provisions of the Plan, to direct the investment by the Trustee of all amounts allocated to the separate accounts of the Participant under the Plan among any one or more of the available Investment Funds.

(c)    Investment Managers.
   (1)    Appointment of Investment Managers. The Investment Fiduciary may appoint one or more Investment Managers with respect to some or all of the assets of the Trust Fund as contemplated by section 402(c)(3) of ERISA. Any such Investment Manager shall acknowledge to the Investment Fiduciary in writing that it accepts such appointment and that it is an ERISA fiduciary with respect to the Plan and the Trust Fund. The Investment Fiduciary shall provide the Trustee with a copy of the written agreement (and any amendments thereto) between the Investment Fiduciary and the Investment Manager. By notifying the Trustee of the appointment of an Investment Manager, the Investment Fiduciary shall be deemed to certify that such Investment Manager meets the requirements of section 3(38) of ERISA. The authority of the Investment Manager shall continue until the Investment Fiduciary rescinds the appointment or the Investment Manager has resigned.
   (2)    Separation of Duties. The assets with respect to which a particular Investment Manager has been appointed shall be specified by the Investment Fiduciary and shall be segregated in a separate account for the Investment Manager (the "Separate Account") and the Investment Manager shall have the power to direct the Trustee in every aspect of the investment of the assets of the Separate Account. The Trustee shall not be liable for the acts or omissions of an Investment Manager and shall have no liability or responsibility for acting pursuant to the direction of, or failing to act in the absence of, any direction from an Investment Manager, unless the Trustee knows that by such action or failure to act it would be itself committing a breach of fiduciary duty or participating in a breach of fiduciary duty by such Investment Manager, it being the intention of the parties that each party shall have the full protection of section 405(d) of ERISA.

(d)    Proxies.
   (1)    Delivery of Information. The Trustee shall deliver, or cause to be delivered, to the Company or Plan Administrator all notices, prospectuses, financial statements, proxies and proxy soliciting materials received by the Trustee relating to securities held by the Trust or, if applicable, deliver these materials to the appropriate Participant or the Beneficiary of a deceased Participant.
   (2)    Voting. The Trustee shall not vote any securities held by the Trust except in accordance with the written instructions of the Company or the Investment Fiduciary. However, the Trustee may, in the absence of instructions, vote "present" for the sole purpose of allowing such shares to be counted for establishment of a quorum at a shareholders' meeting. The Trustee shall have no

calculation, the Plan Administrator shall be entitled to rely upon information furnished to it. The Plan Administrator's decisions shall be binding and conclusive as to all parties.

(e)     Allocation of Duties and Responsibilities. The Plan Administrator may designate other persons to carry out any of his duties and responsibilities under the Plan.

Section 12.02    INVESTMENT FIDUCIARY

(a)     Designation. The Investment Fiduciary shall be Trustee. The Investment Fiduciary may consist of a committee consisting of one or more individuals who may be Employees appointed by the Plan Sponsor. If a committee is appointed, the committee may elect a chairman and may adopt such rules and procedures as it deems desirable. The committee may take action with or without formal meetings and may authorize one or more individuals, who may or may not be members of the committee, to execute documents on its behalf.

(b)     Authority and Responsibility of the Investment Fiduciary. The Investment Fiduciary shall have the following discretionary authority and responsibility:
(1)     to manage the investment of the Trust Fund;
(2)     to appoint one or more Investment Managers;
(3)     to hire such professional assistants and consultants as it, in its sole discretion, deems necessary or advisable;
(4)     to establish, revise from time to time, and communicate to the Trustee and/or Investment Manager(s), an investment policy for the Plan; and
(5)     to supply such information to any person as may be required.

(c)     Procedures. The Investment Fiduciary may adopt such rules and procedures as it deems necessary, desirable, or appropriate in furtherance of its duties hereunder. When making a determination or calculation, the Investment Fiduciary shall be entitled to rely upon information furnished to it.

Section 12.03    COMPENSATION OF PLAN ADMINISTRATOR AND INVESTMENT FIDUCIARY

The Plan Administrator and Investment Fiduciary shall serve without compensation for their services to the extent that such compensation would constitute a prohibited transaction within the meaning of the Code and ERISA.

Section 12.04    PLAN EXPENSES

All direct expenses of the Plan, Trustee, Plan Administrator and Investment Fiduciary or any other person in furtherance of their duties hereunder shall be paid or reimbursed by the Company, and if not so paid or reimbursed, shall be proper charges to the Trust Fund and shall be paid therefrom.

Section 12.05    ALLOCATION OF FIDUCIARY RESPONSIBILITY

A Plan fiduciary shall have only those specific powers, duties, responsibilities and obligations as are explicitly given him under the Plan and Trust Agreement. It is intended that each fiduciary shall not be responsible for any act or failure to act of another fiduciary. A fiduciary may serve in more than one fiduciary capacity with respect to the Plan.

Section 12.06    INDEMNIFICATION

The Company shall indemnify and hold harmless any person serving as the Investment Fiduciary and/or Plan Administrator (and their delegates) from all claims, liabilities, losses, damages and expenses, including

70

## EXECUTION PAGE

The parties have caused this Plan to be executed this __11th__ day of __August__, 2020.

KNS HOLDINGS, LLC:

Signature: _____

Print Name: Kwan Fan _____

Title/Position: DB PLAN MGR _____

**TRUSTEE:**

_____
Kwan Y. Fan

79