# EXHIBIT A

2022 WL 1912255
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Ivan M. BARON, individually and on behalf
of all others similarly situated, Plaintiff,

v.

TALKSPACE, INC., Oren Frank, Mark Hirschhorn,
HEC Sponsor LLC, Douglas L. Braunstein, Douglas
G. Bergeron, Jonathan Dobres, Robert Greifeld,
Amy Schulman, Thelma Duggin, Hudson Executive
Capital LP, and HEC Master Fund LP, Defendants.
Luis Diaz Valdez, individually and on behalf
of all others similarly situated, Plaintiff,

v.

Talkspace, Inc., Oren Frank, Mark Hirschhorn, HEC
Sponsor LLC, Douglas L. Braunstein, Douglas G.
Bergeron, Jonathan Dobres, Robert Greifeld, Amy
Schulman, Thelma Duggin, Hudson Executive
Capital LP, and HEC Master Fund LP, Defendants.

22 Civ. 163 (PGG), 22 Civ. 840 (PGG)
|
Signed 06/03/2022

**Attorneys and Law Firms**

David Avi Rosenfeld, Samuel Howard Rudman, Robbins
Geller Rudman & Dowd LLP (LI), Melville, NY, Richard
William Gonnello, Robbins Geller Rudman & Dowd LLP,
New York, NY, for Plaintiff in 22 Civ. 163 (PGG).

James Michael LoPiano, Joseph Alexander Hood, II, Jeremy
Alan Lieberman, Pomerantz LLP, New York, NY, for Plaintiff
in 22 Civ. 840 (PGG).

Scott Alexander Edelman, Jed Mastren Schwartz, Milbank
LLP, New York City, NY, for Defendants Talkspace, Inc.,
HEC Sponsor LLC, Douglas L. Braunstein, Douglas G.
Bergeron, Jonathan Dobres, Robert Greifeld, Amy Schulman,
Thelma Duggin, Hudson Executive Capital LP, HEC Master
Fund LP in 22 Civ. 163 (PGG).

Mark Stewart Cohen, David Lisner, Cohen & Gresser, LLP,
New York, NY, for Defendant Oren Frank in 22 Civ. 163
(PGG).

Michael Saul Weinstein, Cole Schotz Meisel Forman &
Leonard, P.A., Hackensack, NJ, Bradley Philip Pollina, New

York, NY, for Defendant Mark Hirschhorn in 22 Civ. 163
(PGG).

**ORDER**

PAUL G. GARDEPHE, United States District Judge:

 **\*1** These are two putative class actions brought against
certain officers and directors of Talkspace, Inc., formerly
known as Hudson Executive Investment Corporation
("Hudson"), and its affiliate companies. Pending before the
Court are a number of motions for the consolidation of these
cases, the appointment of lead plaintiff, and the approval of
lead counsel. (See 22 Civ. 163, Dkt. Nos. 23, 27, 30, 33, 37,
41; 22 Civ. 840, Dkt. No. 7) After these motions were filed,
two of the movants – Montague Street Group and Ivan M.
Baron – filed an amended motion seeking joint appointment
as lead plaintiffs. (See 22 Civ. 163, Dkt. No. 49)

For the reasons stated below, Montague Street Group
and Baron will be appointed as co-lead plaintiffs of this
consolidated action, and Rolnick Kramer Sadighi LLP and
Robbins Geller Rudman & Dowd LLP will serve as co-lead
counsel.

**BACKGROUND**

Talkspace is a behavioral health company headquartered
in New York that offers an online platform for one-on-
one therapy with licensed therapists, psychologists, and
psychiatrists. (22 Civ. 840, Cmplt. (Dkt. No. 1) ¶¶ 19, 34)
Talkspace began as Hudson, a "blank check company" that
"raises money from investors in an initial public offering and
then uses the proceeds from the offering to acquire a business
or operational assets, usually from a private company that
does not publicly report financial or operating results." (Id.
¶ 33)

On June 11, 2020, Hudson sold 41.4 million ownership
units in an initial public offering. (Id. ¶ 35) In registration
statements filed in May and June 2020, Hudson stated
that it intended to acquire a company in the healthcare or
financial services industries, and that Hudson and its affiliate
companies were well-equipped to conduct the search for such
a company. (Id. ¶¶ 36-39)

On January 13, 2021, Hudson announced that it had entered into a merger agreement with Talkspace. As a result of the merger, Hudson shareholders were expected to own approximately 50.8% of the common stock of the combined company. (Id. ¶ 42) On February 2, 2021, Hudson filed a registration statement and draft proxy for the merger, which became effective on May 28, 2021. (Id. ¶ 43) On June 17, 2021, Hudson shareholders voted to approve the merger at a special shareholders meeting. (Id. ¶ 53) The merger was consummated on June 22, 2021, and Hudson changed its name to "Talkspace, Inc." (Id.)

On August 9, 2021, Talkspace issued a press release announcing the company's second quarter 2021 financial results, and held an earnings call. (Id. ¶ 54)

On November 15, 2021, Talkspace issued a press release and held an earnings call concerning the company's third quarter 2021 financial results. (Id. ¶ 61) Talkspace's financial results were less favorable than the company had anticipated, and its stock price dropped by 36.28%. (Id. ¶¶ 64-65) By December 30, 2021, Talkspace's common stock was trading 80% below the price at the time of the merger. (Id. ¶ 66)

The first of the instant cases – Baron v. Talkspace, Inc., No. 22 Civ. 163 (PGG) was filed on January 7, 2022. (22 Civ. 163, Dkt. No. 1) Valdez v. Talkspace, Inc., No. 22 Civ. 840 (PGG) was filed on January 31, 2022. (22 Civ. 840, Dkt. No. 1) In both actions, Plaintiffs assert claims under Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, arising out of Defendants' alleged materially false and misleading statements and omissions in the proxy statement issued in connection with the June 22, 2021 merger of Hudson and Talkspace. (22 Civ. 163, Dkt. No. 1, ¶¶ 1, 57-73; 22 Civ. 840, Dkt. No. 1, ¶¶ 1, 87, 103) In Valdez, Plaintiff also asserts a claim under Section 10(b) of the Exchange Act for Defendants' materially false and misleading statements or omissions in the period between June 11, 2020 and November 15, 2021 (the "Class Period"). (22 Civ. 840, Dkt. No. 1, ¶¶ 1, 77-86)

**\*2** Pending before the Court are a number of motions – all filed on March 8, 2022 seeking consolidation, appointment as lead plaintiff, and designation of lead counsel. (See 22 Civ. 163, Dkt. Nos. 23, 27, 30, 33, 37, 41) [1]

1    Unless otherwise specified, all docket citations in the remainder of this Order are to the docket in Baron.

## I. CONSOLIDATION

Fed. R. Civ. P. 42(a) provides that a district court may consolidate "actions before the court involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a)(2). " 'A determination on the issue of consolidation is left to the sound discretion of the Court,' " In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2008 WL 2796592, at *1 (S.D.N.Y. July 16, 2008) (quoting Albert Fadem Tr. v. Citigroup Inc., 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002)), and involves weighing considerations of convenience, judicial economy, and cost reduction while ensuring that the "paramount concern for a fair and impartial trial" is honored. Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990) (citing Flintkote Co. v. Allis-Chalmers Corp., 73 F.R.D. 463 (S.D.N.Y. 1977)).

Here, the Baron and Valdez actions involve common questions of law and fact. Both actions are brought against the same defendants in connection with alleged violations of federal securities laws. (22 Civ. 163, Cmplt. (Dkt. No. 1) ¶¶ 6-19; 22 Civ. 840, Cmplt. (Dkt. No. 1) ¶¶ 19-32) The actions also allege the same wrongdoing – namely, that Defendants violated Sections 14(a) and 20(a) of the Exchange Act by making materially false or misleading statements or omissions in certain proxy statements, which induced Hudson shareholders to support the merger of Hudson and Talkspace at the June 17, 2021 shareholders meeting. (22 Civ. 163, Cmplt. (Dkt. No. 1) ¶¶ 29-40, 57-73; 22 Civ. 840, Cmplt. (Dkt. No. 1) ¶¶ 43-53, 87-103) In Valdez, Plaintiffs further allege that Defendants violated Section 10(b) of the Exchange Act by making materially false and misleading statements during the Class Period – that is, from Hudson's initial public offering in June 11, 2020 until Talkspace's November 15, 2021 press release announcing its third quarter results. (22 Civ. 840, Cmplt. (Dkt. No. 1) ¶¶ 36-60, 77-86)

Although the Baron complaint does not assert a Section 10(b) claim, the factual allegations that provide the basis for that claim in Valdez are similarly pled in Baron. (See Cmplt. (Dkt. No. 1) ¶¶ 22-28, 41-45) "[M]inor differences in facts and legal issues" do not preclude consolidation. In re Fuwei Films Sec. Litig., 247 F.R.D. 432, 435 (S.D.N.Y. 2008) (consolidation appropriate even though one complaint asserted claims against additional defendants and contained "slightly different facts and legal

claims"). Indeed, courts have approved consolidation where the "matters share a common legal question: whether defendants' misrepresentations violated federal securities laws." Kaplan v. Gelfond, 240 F.R.D. 88, 92 (S.D.N.Y. 2007), on reconsideration in part sub nom. In re IMAX Sec. Litig., No. 06CIV6128, 2009 WL 1905033 (S.D.N.Y. June 29, 2009).

Given the similarities between the two complaints' factual allegations and legal claims – and the fact that consolidation is unopposed – consolidation under Fed. R. Civ. P. 42(a) is appropriate. The actions shall be referred to collectively as In re Talkspace, Inc. Securities Litigation, No. 22 Civ. 163 (PGG) (the "Consolidated Talkspace Class Action"). The Clerk of Court will file a copy of this Order in the separate file for each of the above-captioned Talkspace class action cases. Unless otherwise ordered, future filings in any Talkspace class action case herein consolidated shall be filed and docketed only under docket number 22 Civ. 163 (PGG). All counsel who have entered appearances in the above-captioned class action cases shall be deemed to have entered an appearance in the Consolidated Talkspace Class Action under docket number 22 Civ. 163 (PGG).

**\*3** Counsel is directed to alert the Clerk of Court to the filing or transfer of any case that might properly be consolidated as part of this litigation. Any class action involving substantially related questions of law and fact hereafter filed in or transferred to this Court shall be consolidated under the master file number assigned to this case.

Every pleading filed in the Consolidated Talkspace Class Action under docket number 22 Civ. 163 (PGG) shall bear the following caption:

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE TALKSPACE, INC. SECURITIES LITIGATION

22 Civ. 163 (PGG)

The Court's consolidation order does not make any person, firm, or corporation a party to any action in which the person or entity has not been named, served, or added as such in accordance with the Federal Rules of Civil Procedure.

## II. APPOINTMENT OF LEAD PLAINTIFF

The following parties have moved for appointment as lead plaintiff, and for selection of lead counsel:

(1) Montague Street Group, [2] represented by Rolnick Kramer Sadighi LLP (Dkt. No. 23);

(2) Robert Thewes, represented by Levi & Korsinsky, LLP (Dkt. No. 27);

(3) Yirong Xu, represented by The Rosen Law Firm, P.A. (Dkt. No. 30);

(4) Eric D. Johnson and Luis Diaz Valdez, represented by Pomerantz LLP (Dkt. No. 33);

(5) Jason Hendeles, represented by Glancy Prongay & Murray LLP (Dkt. No. 37); and

(6) Ivan M. Baron, represented by Robbins Geller Rudman & Dowd LLP (Dkt. No. 41).

[2]    Montague Street Group is comprised of the following individuals and entities: Steven Jacob Greenblatt, Montague Street LP, Greenblatt Family Investments LLC, William Greenblatt, Judith Greenblatt, the Brandon T. Greenblatt 2015 Trust, the Maggie S. Greenblatt 2015 Trust, and the Steven Jacob Greenblatt 2015 Trust. (See Greenblatt Decl. (Dkt. No. 25-7) at 1)

On March 22, 2022, Movants Johnson and Valdez, and Movant Thewes, filed notices of non-opposition to the competing motions to appoint lead plaintiff, recognizing that they do not have the largest financial interest in this litigation within the meaning of the Private Securities Litigation Reform Act of 1995 (the "PSLRA" or the "Act"). (Dkt. Nos. 45-46) That same day, Movants Montague Street Group and Baron filed a stipulation stating that they are willing to serve as co-lead plaintiffs in order to "avoid[ ] a protracted battle for Lead Plaintiff," and to "allow the[ir] combined resources ... to ... provid[e] the best possible outcome for the Class." (Stip. & Proposed Order (Dkt. No. 50); Joint Br. (Dkt. No. 49) at 8) [3] Movant Hendeles has made a submission asserting that he suffered the third largest loss. [4] (Hendeles Response (Dkt. No. 48) at 3) Movant Xu opposes the appointment of Montague Street Group and Baron, whether individually or as co-lead plaintiffs. (Xu Opp. (Dkt. No 47); Xu Reply (Dkt. No. 51); Xu Sur-Reply (Dkt. No. 54))

3    All references to page numbers in this Order are as reflected in this District's Electronic Case Files ("ECF") system.

4    In his submission, Hendeles acknowledges that he would only be appointed as lead plaintiff if other plaintiffs who suffered a greater loss are disqualified. (Hendeles Response (Dkt. No. 48) at 4)

## A. Presumptive Lead Plaintiff: Largest Financial Interest

### 1. Legal Standard

The PSLRA provides that, no later than twenty days after a securities class action complaint is filed, plaintiff "shall cause to be published ... a notice" advising prospective class members of the pendency and nature of the suit. 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA requires that all lead plaintiff motions be made within sixty days of the date on which the notice is published. Id. § 78u-4(a)(3)(A)(i)(II).

**\*4** The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." Id. § 78u-4(a)(3)(B)(i). The Act creates a "[r]ebuttable presumption" that "the most adequate plaintiff ... is the person or group of persons" that "has the largest financial interest in the relief sought by the class," provided that such person or group "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." Id. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted upon a showing that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II).

"The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest.' " In re Fuwei Films, 247 F.R.D. at 436 (citations omitted). Many courts in this District, however, determine a prospective lead plaintiff's financial interest by looking to "(1) the number of shares purchased; (2) the number of net shares purchased; (3) total net funds expended by the plaintiff[ ] during the class period; and (4) the approximate losses suffered by the plaintiff[ ]." In re CMED Sec. Litig., No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at \*3 (S.D.N.Y. Apr. 2, 2012) (citing cases). Courts

in this District " 'place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.' " In re Orion Sec. Litig., No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at \*5 (S.D.N.Y. July 8, 2008) (quoting Kaplan, 240 F.R.D. at 93). " 'The number of shares held is another factor that may be considered in gauging the movants' [respective] financial interest[s] in ... Section 14(a) claims.' " Plumbers & Pipefitters Nat'l Pension Fund v. Alta Mesa Res., Inc., No. 19 Civ. 920 (LLS), 2019 WL 10979860, at\* 1 (S.D.N.Y. Apr. 29, 2019) (quoting In re Bank of America Corp. Sec., Derivative and ERISA Litig., 258 F.R.D. 260, 269 (S.D.N.Y. 2009)).

### 2. Analysis

The instant cases present two overlapping classes: (1) a class of those who purchased or otherwise acquired Talkspace securities during the Class Period of June 11, 2020 to November 15, 2021 (the "Section 10(b) Class"); and (2) a class of those who held Talkspace securities as of the May 19, 2021 record date and were eligible to vote on the proposed merger at the June 17, 2021 shareholders meeting (the "Section 14(a) Class"). (See 22 Civ. 840, Dkt. No. 1, ¶ 68; see also Joint Br. (Dkt. No. 49) at 6-7; Xu Reply (Dkt. No. 51) at 8-9)

In their joint motion, Montague Street Group and Baron (the "Joint Movants") contend that "[t]heir appointment [would] combine[ ] both movants who have the largest financial interest" in each of these classes. (Joint Br. (Dkt. No. 49) at 9) According to these Movants, (1) Montague Street Group incurred a $4.19 million loss during the Class Period, and thus has the largest financial interest in the Section 10(b) Class; and (2) Baron held the most shares – 24,500 – as of the record date, and thus has the largest financial interest in the Section 14(a) Class. (Id. at 10-11; Rolnick Decl., Ex. B (Dkt. No. 25-2) (Montague Street Group's trading data); Rosenfeld Decl., Ex. B (Dkt. No. 43-2) at 3-7 (shares held by Baron and his assignors)) The Joint Movants acknowledge, however, that Montague Street Group has not asserted a financial interest in connection with the Section l 4(a) Class, and that Baron has not asserted a financial interest in connection with the Section 10(b) Class. (See Joint Br. (Dkt. No. 49) at 11)

In opposing the Joint Movants' application, Xu argues that she should be appointed lead plaintiff because she suffered a loss of $226,966.74 during the Class Period and held 8,582 shares as of the record date, [5] and is thus qualified to represent

both the Section 10(b) Class and the Section 14(a) Class. (See Xu Reply (Dkt. No. 51) at 8-9)

5     The "Loss Chart" Xu submitted in support of her motion (see Dkt. No. 32-3) lists the losses Xu suffered during the Class Period but does not disclose how many shares Xu held as of the record date.

**\*5** Xu does not dispute that Montague Street Group has a larger financial interest in connection with the Section 10(b) claim, nor does she dispute that Baron has a larger financial interest with respect to the Section 14(a) claim. [6] Xu argues, however, that the Joint Movants are "ineligible" to serve as co-lead plaintiffs because (1) their joint motion was filed after the PSLRA's 60-day deadline to file lead plaintiff motions; (2) individually, they do not have standing to pursue claims on behalf of both classes; (3) the Joint Movants have not shown that they can function cohesively and effectively together; and (4) Montague Street Group did not properly file PSLRA certifications for each of its members. (Xu Opp. (Dkt. No. 47) at 10-14; Xu Reply (Dkt. No. 51) at 2-9; Xu Sur-Reply (Dkt. No. 54) at 1-3)

6     Based on the parties' motion papers, the relevant financial interest components of all movants are as follows:

| Movant | (1) Shares Purchased During Class Period | (2) Net Shares Retained | (3) Net Funds Expended | (4) Claimed Loss | Record Date Holdings |
|---|---|---|---|---|---|
| Montague Street Group | 2,408,864 | 2,408,864 | $15,068,178.23 | $2,391,205.41 | N/A |
| Baron | N/A | N/A | N/A | N/A | 24,500 |
| Xu | 46,952 | 46,952 | $313,163.63 | $226,966.74 | 8,582 |
| Hendeles | 10,650 | 10,650 | $113,678.39 | $94,075.32 | 10,650 |
| Thewes | 30,000 | 30,000 | $119,849.99 | $61,750.29 | N/A |
| Johnson & Valdez | 14,424 | 13,000 | $101,288.00 | $60,517.00 | 2,000 |

(See Joint Br. (Dkt. No. 49) at 11; Rolnick Decl., Ex. B (Dkt. No. 25-2) (Montague Street Group's trading data); Rosenfeld Decl., Ex. B (Dkt. No. 43-2) at 3-7 (shares held by Baron and his assignors); Xu Loss Chart (Dkt No. 32-3); Linkh Decl., Ex. C (Dkt. No. 39-3) (Hendeles loss chart); Apton Decl., Ex, B (Dkt. No. 29-2) (Thewes loss

chart); Lieberman Decl., Ex. A (Dkt. No. 36-1) (Johnson & Valdez loss chart))

As to the timeliness of the Joint Movant's application, "courts in this District and elsewhere have allowed amended motions by groups that were configured after the sixty-day deadline where each member of the newly-formed group had previously filed a timely motion," and where the group was not formed "in order to secure lead plaintiff status" by "manipulat[ing] the size of [the group's] financial loss." See Peters v. Jinkosolar Holding Co., No. 11 Civ. 7133 (JPO), 2012 WL 946875, at \*9-10 (S.D.N.Y. Mar. 19, 2012) (citing cases). Here, although the Joint Movants' application was filed after the sixty-day deadline for lead plaintiff motions, [7] Montague Street Group and Baron each timely filed individual motions on March 8, 2022. (See Dkt. Nos. 23, 41)

7     Notice of the Baron action was published on January 7, 2022 (see Dkt. No. 15), making March 8, 2022, the deadline for filing lead plaintiff motions. See Reitan v. China Mobile Games & Ent. Grp., Ltd., 68 F. Supp. 3d 390, 397 (S.D.N.Y. 2014) (" 'All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action.' " (quoting In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999))). Montague Street Group and Baron filed their joint motion on March 22, 2022. (Dkt. No. 49)

Moreover, the joint motion does not reflect an effort to "manipulate the size" of the losses suffered by Montague Street Group and Baron. As set forth above, Montague Street Group – standing alone – has the largest loss in the Section 10(b) Class, and Baron – standing alone – has the largest financial interest for purposes of the Section 14(a) Class. [8] Accordingly, Xu's timeliness objection is not persuasive.

8     Montague Street Group's interest in the Section 10(b) Class is more than eighteen times that of Xu, and Baron's interest in the Section 14(a) Class is nearly three times that of Xu. (See Joint Br. (Dkt. No. 49) at 11; Rolnick Decl., Ex. B (Dkt. No. 25-2); Rosenfeld Decl., Ex. B (Dkt. No. 43-2) at 3-7; Xu Loss Chart (Dkt. No. 32-3))

Xu also argues that the Joint Movants have not shown that they can "function cohesively and effectively" together. (Xu Reply (Dkt. No. 51) at 4-7) In their motion, the Joint Movants acknowledge that they "d[o] not have a

relationship that predates the litigation," but state that they "are committed to zealously and efficiently prosecuting this case and have agreed to exercise joint decision-making and work cooperatively to protect the interests of the Class." (Joint Br. (Dkt. No. 49) at 8-9; see also id. at 9 (promising to "discuss case filings and strategy ... and ensure that the work performed ... is non-duplicative and [is] in the best interests of the Class)) Xu argues that these assertions are not sufficient to demonstrate that Montague Street Group and Baron can work well together (Xu Reply (Dkt. No. 51) at 4-7), and cites cases in which courts expressed skepticism about groups of plaintiffs that were merely "cobbled together" by counsel in order to aggregate their losses and qualify as lead plaintiff. (Id.) [9]

[9] See In re Razorfish, Inc. Sec. Litig., 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001); In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 401-02 (S.D.N.Y. 2006); Varghese v. China Shenghuo Pharm. Holdings, Inc., 589 F. Supp. 2d 388, 391-93 (S.D.N.Y. 2008); Jonathan Tan v. NIO Inc., No. 19 Civ. 1424 (NGG) (VMS), 2020 WL 1031489, at *3 (E.D.N.Y. Mar. 3, 2020); Goldberger v. PXRE Grp., Ltd., No. 06 Civ. 3410 (KMK), 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007); Khunt v. Alibaba Grp. Holding Ltd., 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015); Stires v. Eco Sci. Sols., Inc., No. 17 Civ. 3707 (RMB) (KMW), 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018); Jakobsen v. Aphria Inc., No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019); In re Ply Gem Holdings. Inc., Sec. Litig., No. 14 Civ. 3577 (JPO), 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014).

**\*6** As discussed above, however, Montague Street Group and Baron were not "cobbled together" for purposes of aggregating their losses, given that each independently has the largest financial interest for purposes of their respective classes. And, as Montague Street Group notes (see Montague Street Group Sur-Reply (Dkt. No. 55) at 2), the involvement of co-lead counsel that previously separately represented each of the two overlapping classes may well "ensure[ ] that the interests of all class members will be adequately represented in the prosecution of the action and ... will not be distorted by the differing aims of differently situated claimants." See In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42, 49 (S.D.N.Y. 1998). This Court concludes that the Joint Movants

have adequately demonstrated that they can "cohesively" represent the classes here.

Finally, Xu argues that Montague Street Group did not comply with the PSLRA's certification requirement, [10] because only one certification signed by Steven Greenblatt was timely filed by the Montague Street Group, which has eight members. [11] (Xu Opp. (Dkt. No. 47) at 10-12) (citing 15 U.S.C. § 78u-4(a)(2)(A) ("Each plaintiff seeking to serve as a representative party ... shall provide a sworn certification, which shall be personally signed by such plaintiff." (emphasis omitted)); see Greenblatt Decl. (Dkt. No. 25-7))

[10] 15 U.S.C. § 78u-4(a)(2)(A) provides that the required PSLRA certification must state (1) that plaintiff reviewed the complaint and authorized its filing; (2) that plaintiff did not purchase the securities at issue at the direction of plaintiff's counsel or in order to participate in the litigation; (3) that plaintiff is willing to serve as a representative of the class; (4) any other actions filed in the prior three-year period in which plaintiff sought to serve as a representative party on behalf of the class; (5) plaintiff's own transactions that are at issue in the case; and (6) that plaintiff will not accept payment beyond his or her pro rata share for serving as a representative party, except as approved by the court.

[11] In Greenblatt's certification, he states that he is "authorized to make this declaration on behalf of each of the [eight] members of the Montague Street Group," and that he is authorized to act on behalf of group member Montague Street LP as that entity's investment manager. (Greenblatt Decl. (Dkt. No. 25-7) ¶¶ 2-3, 7) Xu argues that Greenblatt's certification is deficient as to six of the group's members – that is, all members other than Greenblatt and Montague Street LP – because Greenblatt has not provided "any basis for his authority to litigate on behalf of the other six group members." (Xu Opp. (Dkt. No. 47) at 11-12) Xu further argues that Greenblatt's purportedly deficient certification subjects Montague Street Group to a "unique defense" – that Montague Street Group does not have standing to litigate the claims of its members. (Id. at 12-14)

As an initial matter, "it is unsettled whether a candidate for lead plaintiff who has not filed a complaint is even required to submit ... a certificate" under 15 U.S.C. § 78u-4(a)(2)(A), since that section is entitled "Certification Filed with Complaint." See Lucas v. United States Oil Fund, LP, No. 20 Civ. 4740 (PGG), 2020 WL 5549719, at *5 (S.D.N.Y. Sept. 16, 2020) (quotation marks omitted) (citing cases). In any event, Montague Street Group has since filed amended certifications from each of its members that comply with the certification requirements under the PSLRA, thereby rendering the issue moot. (See Peller Decl., Exs. A-H (Dkt. Nos. 53-1 - 53-8)) While Xu maintains that the amended certifications should be disregarded as untimely (see Xu Opp. (Dkt. No. 47) at 11; Xu Sur-Reply (Dkt. No. 54) at 1-2), courts have allowed certifications to be amended after the sixty-day deadline has passed. See Lucas, 2020 WL 5549719, at *5 (citing Villare v. ABIOMED, Inc., No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *5 n.9 (S.D.N.Y. June 29, 2020) and Rao v. Quorum Health Corp., 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016)); see also Chao Lu v. Jumei Int'l Holding Ltd., No. 14 Civ. 9826, 2015 WL 4104570, at *2 (S.D.N.Y. June 22, 2015) ("[T]he supplemental declarations submitted ... remedied any deficiencies in the initial certification."). Montague Street Group's delayed certifications do not render the group ineligible to serve as lead plaintiff. [12]

12      In her sur-reply, Xu argues that the Joint Movants should be disqualified from serving as co-lead plaintiffs because they neglected to file a motion to consolidate. (Xu Sur-Reply (Dkt. No. 54) at 2-3; see Montague Street Group Motion (Dkt. No. 23); Baron Motion (Dkt. No. 41)) Because this argument was raised for the first time in Xu's sur-reply, the Court has not considered it.

 **\*7**  The Court concludes that Montague Street Group and Baron possess the largest financial interest in this case, and that Xu has not rebutted the PSLRA's presumption in favor of Montague Street Group and Baron serving as co-lead plaintiffs.

### 3. Rule 23 Requirements

Fed. R. Civ. P. 23 states that a party may serve as a class representative only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a). In order for the rebuttable presumption to apply, courts have required only a prima facie showing that the requirements of Rule 23 are met. See In re KIT Digital Inc. Sec. Litig., 293 F.R.D. 441, 445 (S.D.N.Y. 2013) (citation omitted). Furthermore, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA," In re Oxford Health Plans, 182 F.R.D. at 49 (citations omitted); see also Kaplan, 240 F.R.D. at 94 ("[A]t this stage of litigation, only a preliminary showing of typicality and adequacy is required." (citation omitted)).

"Typicality is established where each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " Freudenberg v. E*Trade Fin. Corp., No. 07 Civ. 8538, 2008 WL 2876373, at *5 (S.D.N.Y. July 16, 2008) (quoting In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992)). "The lead plaintiff's claims need not be identical to the claims of the class to satisfy the [preliminary showing of] typicality[, however]." In re Fuwei Films, 247 F.R.D. at 436 (quotation marks and citation omitted).

Here, Montague Street Group and Baron allege claims typical of other class members. With respect to the Section 10(b) Class, Montague Street Group asserts that its members "(1) purchased Talkspace securities during the Class Period on the open market; (2) at prices artificially inflated by Defendants' false and misleading statements or omissions; and (3) [were] damaged thereby," (Montague Street Group Br. (Dkt. No. 24) at 14) As to the Section 14(a) Class, Baron asserts that he and his assignors "(1) held Talkspace common stock on May 19, 2021, the record date; (2) [were] adversely affected by defendants' false and misleading statements; and (3) suffered damages thereby." (Baron Br. (Dkt. No. 42) at 7) These allegations are sufficient to a make a prima facie showing that the Joint Movants' claims are typical of other class members.

With respect to adequacy of representation, this requirement is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." Kaplan, 240 F.R.D. at 94. Here, Montague Street Group's counsel – Rolnick Kramer Sadighi LLP ("RKS") –

and Baron's counsel Robbins Geller Rudman & Dowd LLP – have been appointed as lead counsel or co-lead counsel in numerous securities class actions. (See Rolnick Decl. (Dkt. No. 25) ¶¶ 4-12; id., Ex. H (Dkt. No. 25-8) at 5-6 (firm resume); Baron Br. (Dkt. No. 42) at 8 & n.2) And, as explained above, Xu has not shown that Montague Street Group's or Baron's claims are subject to unique defenses or that they are otherwise not suitable to serve as co-lead plaintiffs. Accordingly, the adequacy of representation requirement is satisfied.

### III. APPOINTMENT OF LEAD COUNSEL

 **\*8**  Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). There is a " 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.' " See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., No. 03 MDL 1529 (LMM), 2008 WL 4128702, at \*2 (S.D.N.Y. Sept. 3, 2008) (quoting In re Cendant Corp. Litig., 264 F.3d 201, 276 (3d Cir. 2001)).

Here, Montague Street Group and Baron have, respectively, selected RKS and Robbins Geller to serve as their counsel. Montague Street Group has submitted a declaration and RKS firm resume providing a detailed description of the educational backgrounds and legal experience of many of the attorneys at the firm, as well as a list of securities class actions in which the firm has served or is now serving as lead or co-lead counsel. (See Rolnick Decl. (Dkt. No. 25) ¶¶ 4-12; id., Ex. H (Dkt. No. 25-8) (firm resume)) Baron's submission likewise describes Robbins Geller's extensive experience litigating securities class actions, and asserts that Robbins Geller attorneys have "obtained the largest securities fraud class action recoveries in the Fifth, Seventh, Eighth, and Eleventh Circuits." (See Baron Br. (Dkt. No. 42) at 8 & n.2) RKS and Robbins Geller are also currently serving as co-counsel in a securities class action pending in the Eastern District of New York. (See Montague Street Group Sur-Reply

(Dkt. No. 55) at 2 (citing In re Chembio Diagnostics, Inc. Sec. Litig., No. 2:20 Civ. 2706 (ARR) (E.D.N.Y.)))

This Court concludes that RKS and Robbins Geller are qualified to serve as co-lead counsel in this matter.

### CONCLUSION

For the reasons stated above, the above-captioned actions, as well as any pending, subsequently filed, removed, or transferred actions that include claims related to those asserted in the above-captioned actions, are consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a) under the docket number of the lead case: 22 Civ. 163 (PGG). Filings in the consolidated action shall bear the caption In re Talkspace, Inc. Securities Litigation.

Montague Street Group's and Baron's joint motion for appointment as co-lead plaintiffs and for selection of Rolnick Kramer Sadighi LLP and Robbins Geller Rudman & Dowd LLP as co-lead counsel is granted. (See Dkt. No. 49) Montague Street Group's and Baron's individual motions are denied as moot. (Dkt. No. 23, 41) All competing motions are denied. The Clerk of Court is directed to terminate the motions. (22 Civ. 163, Dkt. Nos. 23, 27, 30, 33, 37, 41; 22 Civ. 840, Dkt. No. 7)

A consolidated class action complaint is to be filed by **July 1, 2022**. By **July 14 2022,** Defendants will submit a joint letter to this Court stating whether they intend to answer or move to dismiss. In the event that Defendants intend to move to dismiss, they will propose a briefing schedule that has been discussed with Plaintiffs' counsel.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 1912255

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.