**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRAIG M. ROSE, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> BUTTERFLY NETWORK, INC. F/K/A LONGVIEW ACQUISITION CORP., TODD M. FRUCHTERMAN, STEPHANIE FIELDING, JONATHAN M. ROTHBERG, JOHN RODIN, LARRY ROBBINS, MARK HOROWITZ, WESTLEY MOORE, DEREK CRIBBS, and RANDY SIMPSON, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civ. No. 2:22-cv-00854-MEF-JBC |

**PLAINTIFFS' SUR-REPLY**
**TO DEFENDANTS' MOTION TO DISMISS**
**THE SECOND AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................................ii

ARGUMENT ....................................................................................................................................1

    I.    Defendants' Belated Arguments Made for the First Time on Reply Are Waived ..................... 1

    II.   The Misstatements Are Not Puffery ....................................................................................... 2

    III.  The Investor Presentations Materials Were Explicitly Referenced By and Incorporated Into the Form S-4 ......................................................................................................................... 4

    IV.  The Introduction of New Software and Defendants' Admissions Relating to the State of Butterfly's Software at the IPO Are Relevant to Scienter......................................................... 5

    V.   The Law of the Case Doctrine Applies Because the Court Already Decided Plaintiffs' Allegations of Stock Purchases Are Sufficient to Support Section 11 Standing at this Stage of Litigation .................................................................................................................................. 7

    VI.  Defendants Offer No Legitimate Basis for Reconsideration of the Court's Earlier Decision ... 7

    VII. Even If the Court Reconsiders the Issue of Standing, the Second Amended Complaint Adequately Pleads Facts to Support Plaintiffs' Standing to Assert Section 11 Claims ............. 9

CONCLUSION ................................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Bayer AG & Bayer Corp. v. Schein Pharm.*,
129 F. Supp. 2d 705 (D.N.J. 2001) ............................................................................... 1

*Bldg. Trades United Pension Trust Fund v. Kenexa Corp.*,
2010 LEXIS U.S. Dist. LEXIS 102729 (E.D. Pa. Sept. 27, 2010) ............................................ 3

*Carmack v. Amaya Inc.*,
258 F. Supp. 3d 454 (D.N.J. Jun. 15, 2017) ................................................................. 10

*Casco v. Ponzios Rd., Inc.*,
2021 U.S. Dist. LEXIS 137617 (D.N.J. July 23, 2021) ................................................. 1

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 U.S. Dist. LEXIS 217963 (D.N.J. Dec. 31, 2018) .................................................. 9

*Fagan v. Fischer*,
2021 U.S. Dist. LEXIS 219137 (D.N.J. Nov. 12, 2021) .................................................. 7

*Geibel v. United States*,
667 F. Supp. 215 (W.D. Pa. 1987) ................................................................................. 8

*Hayman Cash Register Co. v. Sarokin*,
669 F.2d 162 (3d Cir. 1982) ........................................................................................... 7

*Hilburn v. Dep't of Corr.*,
2010 U.S. Dist. LEXIS 15777 (D.N.J. Feb. 22, 2010) .................................................. 1

*Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l, Inc.*,
2018 U.S. Dist. LEXIS 157328 (D.N.J. Sep. 14, 2018) ................................................. 10

*In re AT&T Corp. Sec. Litig.*,
2004 U.S. Dist. LEXIS 29588 (D.N.J. Sep. 2, 2004) ..................................................... 4

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ....................................................................................... 10

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
2020 U.S. Dist. LEXIS 98830 (D.N.J. June 5, 2020) .................................................... 8

*In re Computer Assocs. Class Action Sec. Litig.*,
75 F. Supp. 2d 68 (E.D.N.Y. 1999) ................................................................................ 3

*In re Enzymotec Secs. Litig.*,
2015 U.S. Dist. LEXIS 167403 (D.N.J. Dec. 14, 2015) ................................................ 2

*In re Hertz Glob. Holdings, Inc.*,
905 F.3d 106 (3d Cir. 2018) ............................................................................................ 6

ii

*In re Pharmacy Benefit Managers Antitrust Litig.*,
   582 F.3d 432 (3d Cir. 2009) ..................................................................... 7

*In re RAIT Fin. Tr. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 103549 (E.D. Pa. Dec. 22, 2008)........................... 5

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
   604 F.Supp. 2d 332 (D. Mass. 2009)......................................................... 3

*In re Suprema Specialties, Inc. Sec. Litig.*,
   334 F. Supp. 2d 637 (D.N.J. 2004) ............................................................ 9

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006) ................................................................. 7, 9

*In re Urban Outfitters, Inc. Sec. Litig.*,
   103 F.Supp.3d 635 (E.D. Pa. May 4, 2015) .............................................. 3

*In re Valeant Pharms. Int'l, Inc. Sec. Litig.*,
   2017 U.S. Dist. LEXIS 66037 (D.N.J. Apr. 28, 2017) .............................. 10

*In re Viropharma, Inc. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 5623 (E.D. Pa. 2003)............................................ 2

*In re Wilmington Tr. Sec. Litig.*,
   29 F. Supp. 3d 432 (D. Del. 2014)............................................................. 5

*Laborers' Intern. Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*,
   26 F.3d 375 (3d Cir. 1994) ....................................................................... 1

*Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Swanson*,
   2011 U.S. Dist. LEXIS 62551 (D. Del. June 14, 2011) .............................. 2

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ................................................................................. 2

*Speeney v. Rutgers*,
   369 F. App'x 357 (3d Cir. 2010) ............................................................... 7

*Szaloczy v. Kone Elevators & Escalators*,
   2021 U.S. Dist. LEXIS 121998 (D.N.J. June 29, 2021)............................. 1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................. 6

*Vrakas v. U.S. Steel Corp.*,
   2018 U.S. Dist. LEXIS 168561 (W.D. Pa. Sep. 29, 2018) ......................... 9

**Statutes**

15 U.S.C. § 77k(a) ..................................................................................... 10

Plaintiffs respectfully submit this Sur-reply to Defendants' Motion to Dismiss the Second Amended Class Action Complaint.

## ARGUMENT

### I.    Defendants' Belated Arguments Made for the First Time on Reply Are Waived

Arguments not raised in a motion are waived and cannot be raised in a reply brief. *See Szaloczy v. Kone Elevators & Escalators*, 2021 U.S. Dist. LEXIS 121998, at *12 (D.N.J. June 29, 2021) (declining to consider an argument first raised on reply); *Hilburn v. Dep't of Corr.*, 2010 U.S. Dist. LEXIS 15777, at *36 (D.N.J. Feb. 22, 2010) ("Typically, an argument not raised in an opening brief is waived, and a passing reference to an argument in a brief is likewise insufficient.") (citing *Laborers' Intern. Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

Here, Defendants raise at least four new arguments in their Reply Brief in Further Support of Defendants' Motion to Dismiss the Second Amended Class Action Complaint ("Reply") (ECF 79) that were not raised in their Motion to Dismiss the Second Amended Class Action Complaint ("MTD") (ECF 72-2). Specifically, Defendants argue in their Reply that (i) the misstatements are puffery (Reply at 2-3); (ii) the Investor Presentation materials were not incorporated into the Form S-4 (Reply at 1-4); (iii) the Defendants' admissions relating to the introduction of new software were not relevant to scienter (Reply at 11-14); and (iv) to the extent the Court did not already decide the issue of Section 11 standing, the Court should reconsider its earlier decision on standing (Reply at 14-15). Because these arguments were raised for the first time in Defendants' Reply, they are untimely and have been waived. *See Casco v. Ponzios Rd., Inc.*, 2021 U.S. Dist. LEXIS 137617, at *14 (D.N.J. July 23, 2021) (an argument "'is waived unless a party raises it in its opening brief[]'" and "'a passing reference to an issue'" in an opening brief is "insufficient") citing *Laborers' Int' Union of N. Am., AFL-CIO*, 26 F.3d at 398; *see also Bayer AG & Bayer Corp. v. Schein Pharm.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (disregarding arguments in a reply brief based on "[p]assing references …in footnotes in the opening brief" because those passing references "do[] not put the opposing party on notice" "that the moving party is moving on that particular issue."). As discussed below, even if the Court considers Defendants' belated arguments, those arguments lack merit.

1

## II.     The Misstatements Are Not Puffery

Plaintiffs' brief conclusively established that the alleged misstatements are not forward-looking and thus, not protected by the PSLRA's "safe harbor" provisions. ECF 78, Opposition Memorandum at 10, 12-13. Thus, Defendants pivot and belatedly claim that a handful of the Complaint's well-pleaded misstatements are "classic examples" of "puffery" because they are either mere corporate optimism or too vague to be actionable. Reply at 2-3. Defendants are wrong.

Objective and verifiable statements are not mere puffery. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184 (2015). Moreover, "a statement is considered puffery only when it is immaterial." *In re Enzymotec Secs. Litig.*, 2015 U.S. Dist. LEXIS 167403, at * 45 (D.N.J. Dec. 14, 2015). A court may only hold a misstatement or omission is immaterial and "inactionable as a matter of law" where the statement is "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Id*. at 46. "To determine whether a statement is puffery, a court must examine the context in which the statement was made." *In re Viropharma, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 5623, at *20 (E.D. Pa. 2003).

Here, when read in context, Defendants' statements are objective, verifiable, and pertain to information that was material to investors. For instance, in the November 20, 2020 presentation, the statement "strong initial adoption" was accompanied by a representation that "Butterfly has an existing footprint in most of the Top 100 US Health Systems[.]" ¶¶237-38. In this context, Defendants misleadingly linked the purported "strong initial adoption" to the type of large enterprise customers that investors were most interested in. This statement was objective, verifiable, and demonstrably false given that Butterfly did not have any initial adoption of its Probes by healthcare institutions and would not obtain its first enterprise customer until more than a year later, after it developed the technology enterprise customers required. ¶200; *see Local 731 I.B. of T. Excavators & Pavers Pension Trust Fund v. Swanson*, 2011 U.S. Dist. LEXIS 62551, at *30 (D. Del. June 14, 2011) ("statements about the strength and stability of the print yellow pages

2

market" are not puffery where defendants knew the market was declining).[1]

Similarly, Defendant Fruchterman's representation that "[t]here's strong demand in enterprise right now for Butterfly, not only as a unique ultrasound device, but for our total solution too" is not puffery because it provided "'concrete information about the performance [and business practice] of [a] specific'" product, which was misleading given the Company was unable to sell its Probes to enterprise customers and the "deals" in Butterfly's pipeline were illusory. *See In re Urban Outfitters, Inc. Sec. Litig.*, 103 F.Supp.3d 635, 651 (E.D. Pa. May 4, 2015) (where misstatements "impl[ied] that there is strong demand for [Company's] products[,]" such information was not puffery); ¶¶291-92. Indeed, on the November 2021 earnings call at the end of the Class Period, Defendant Fruchterman admitted that Butterfly had not built up its enterprise customer base or pipeline, and was only just "kick-start[ing] enterprise level implementations" – eight months after he represented there was purportedly strong demand. ¶¶291-92. Defendants' statement that Butterfly was "excited about the demand in the marketplace today" while reaffirming guidance is likewise not puffery, particularly since Defendants knew that guidance was unattainable due to lack of enterprise demand. ¶¶293, 297; *see In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F.Supp. 2d 332, 342 (D. Mass. 2009) (statement concerning the strength of demand is "definite and important to a potential investor" and therefore not puffery); *In re Computer Assocs. Class Action Sec. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999) (statement that there is "strong worldwide demand" actionable where defendants "fail[ed] to disclose materially adverse business trends[.]").

---

[1] Defendants' reliance on *Bldg. Trades United Pension Trust Fund v. Kenexa Corp.*, 2010 LEXIS U.S. Dist. LEXIS 102729, at *11, 47 (E.D. Pa. Sept. 27, 2010) is misplaced. There, the Court found that Defendants' representation that a drug "would maintain a strong position" in a particular "attractive market" was not material where that drug was performing better than prior years in that market. *Id*. By contrast, here, Defendants' representation that demand was strong amongst enterprise customers would be material to investors because, in reality, demand was non-existent. *See* ¶292 ("CW 5 corroborated CW 2 and CW 3's account that Butterfly had no successful enterprise-wide implementations at the time of the IPO" or during the Class Period).

**III.    The Investor Presentations Materials Were Explicitly Referenced By and Incorporated Into the Form S-4**

Defendants argue in their Reply that the misstatements in the Investor Presentation materials are not actionable because they were not incorporated into the Form S-4 by reference. Reply at 1 ("The claim that the Presentation was 'incorporated into the S-4 by reference' [] is belied by Form S-4 itself."); Reply at 4 ("[T]he suggestion that the Investor Presentation was incorporated into the Form S-4—is wrong. The Form S-4 speaks for itself: the Investor Presentation slides themselves appeared nowhere in it[.]").

This position is completely contrary to the one Defendants took in their Motion to Dismiss wherein they described the November 20, 2020 presentation as the "investor presentation materials incorporated into the Form S-4." MTD at 4. The Court should reject Defendants' argument on this basis, alone. *See In re AT&T Corp. Sec. Litig.*, 2004 U.S. Dist. LEXIS 29588, at *30-31 (D.N.J. Sep. 2, 2004) (misstatements in financial guidance outside of the registration statement, which defendants admitted were incorporated into the registration statement by reference, provided the basis of a claim under federal securities laws).

Moreover, Defendants are wrong. The Prospectus incorporated the November 20, 2020 Form 8-K attaching the presentation by reference. The Form S-4 explicitly states that investors could rely on "information contained or incorporated by reference into this proxy statement/prospectus" (ECF 72-5 at 13) and that "[t]his proxy statement/prospectus incorporates important business and financial information [] from other documents that are not included in or delivered with this proxy statement/prospectus. This information is available for you to review through the SEC's website[.]" ECF 72-5 at 22. The Form S-4 also indicates what materials are incorporated by reference: "For a more detailed description of the information incorporated by reference [], see the section titled '*Where You Can Find More Information.*'" *Id*. That section states, in relevant part: "This proxy statement/prospectus does not contain all of the information included in the registration statement. […] Longview files reports, proxy statements and other information with the SEC as required by the Exchange Act. ***You can read Longview's or New Butterfly's SEC filings […] over the internet at the***

4

*SEC's website[.]*" The Investor Presentation materials *were filed with the SEC in a Form 8-K* on November 20, 2020, which was available to investors at the time of the IPO just a few months later. SAC ¶76.

Moreover, the Form S-4 explicitly references and incorporates the Investor Presentation materials on multiple occasions. *E.g.*, ECF 72-5 at 135-36 ("In addition, the parties began preparing an investor presentation for meetings with certain targeted investors."); ECF 72-5 at 523 ("Without limiting the generality of the foregoing, the Subscriber acknowledges that it has received (or in the case of documents filed with the SEC, had access to) the following items []: … (iii) *the investor presentation by the Company and the Target, a copy of which will be furnished by the Company to the SEC*.").

Courts in the Third Circuit consistently hold that misstatements found in documents incorporated into a registration statement by reference may be the basis for claims under federal securities laws. *See e.g., In re RAIT Fin. Tr. Sec. Litig.*, 2008 U.S. Dist. LEXIS 103549, at *26-29 (E.D. Pa. Dec. 22, 2008) (finding that the misstatements in a Form 8-K/A, incorporated by reference into the registration statement, were actionably false under the Securities Act and the Exchange Act); *In re Wilmington Tr. Sec. Litig.*, 29 F. Supp. 3d 432, 451 (D. Del. 2014) (finding that the misstatements in a Form 10-K, incorporated by reference into the registration statement, were actionably false under Section 11 of the Securities Act).

Accordingly, Defendants' new argument on Reply should be rejected outright because it is untimely, contradicts Defendants' opening position in the MTD, and lacks factual and legal support.

IV.     **The Introduction of New Software and Defendants' Admissions Relating to the State of Butterfly's Software at the IPO Are Relevant to Scienter**

Defendants contend (wrongly) that Butterfly's introduction of updated software adding the new functionality enterprise customers required in February 2022 (¶196) cannot be considered in the scienter analysis because Plaintiff purportedly only alleged it in the SAC as a basis for loss causation. Reply at 11 (claiming the SAC "previously identified [certain scienter facts] as relevant only to a different element of their claims."). This argument has no legal support or factual merit.

5

First, there is no legal rule that facts in a complaint must be designated or "identified" as scienter facts. It is well-established that courts in the Third Circuit take a holistic view of the complaint when evaluating whether the plaintiffs have sufficiently pleaded facts to raise an inference of scienter. *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 114 (3d Cir. 2018) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)) ("[I]n conducting the scienter analysis, courts must analyze the complaint holistically to determine whether its allegations, 'taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.'"). Moreover, Defendants fail to cite any case indicating that admissions from a CEO cannot be informative of both scienter and loss causation.

Second, Defendants' argument is factually incorrect and misleading. While Plaintiffs' scienter arguments in the Opposition Memorandum included a citation to ¶357 which is relevant to loss causation, that is far from the only paragraph in the SAC that alleges Defendants' admissions. Indeed, elsewhere in the SAC, Plaintiffs allege Defendants' admission as a basis for scienter and falsity. *See e.g.,* ¶196 ("Then, on February 28, 2022, Butterfly issued a press release that 'introduced' the Company's new software, Butterfly Blueprint, which was described as 'a system-wide platform designed to support the scaled deployment of ultrasound across hospitals and health systems[.]' […]," which was "substantially the same as the description of the Butterfly software that had been described to investors in the Defective Proxy/Registration Statement"); ¶203 (Fruchterman: "We have spent the last year investing heavily in the development of our software solutions Blueprint and Compass. […] [W]e have gone from software that was objectively lagging to software that is now highly valued"). Defendants either fail to recognize, or intentionally ignore, that the allegations of scienter—*e.g.* that Fruchterman admitted knowing the earlier software was lagging—*were not* "identified as relevant only to" loss causation (Reply at 11), but were plead generally in the background section and throughout the SAC.

To the extent Defendants argue that Defendant Fruchterman was unaware of the state of Butterfly's software in January 2021 when he agreed to be named in, and signed, the Form S-4, Defendants are admitting that Fruchterman acted recklessly in making the misstatements without

6

having knowledge of the state of the Company and its only product.

**V.      The Law of the Case Doctrine Applies Because the Court Already Decided Plaintiffs' Allegations of Stock Purchases Are Sufficient to Support Section 11 Standing at this Stage of Litigation**

The "law of the case" doctrine "precludes relitigation of issues that the parties had a full and fair opportunity to litigate." *Speeney v. Rutgers*, 369 F. App'x 357, 360 (3d Cir. 2010). "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009).

Here, the parties had a full and fair opportunity to litigate whether Plaintiffs had adequately pleaded facts to support their standing to assert claims under Section 11 of the Securities Act. Defendants first raised this issue in their pre-motion letter to the Court. ECF 60. In that letter, Defendants presented the facts of the case, applicable case law, and argument applying the law to the facts. Then, at the pre-motion conference, Defendants argued the issue to the Court. ECF 67. Defendants correctly point out on Reply that the Court agreed with Plaintiffs that they sufficiently alleged Section 11 standing at this juncture: "At the pre-motion conference, the Court accepted Plaintiffs' contention that this rote allegation was sufficient under *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n. 7 (3d Cir. 2006)." Reply at 15. In short, Defendants admit that the Court already "decide[d] upon a rule of law" and, therefore, "that decision should continue to govern the same issues in subsequent stages in the same case." *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d at 439.

**VI.      Defendants Offer No Legitimate Basis for Reconsideration of the Court's Earlier Decision**

As described in Section V, *supra*, the law of the case doctrine in the Third Circuit holds that once an issue has been decided it will not be relitigated in the same case except in unusual circumstances. *See Fagan v. Fischer*, 2021 U.S. Dist. LEXIS 219137, at *21 (D.N.J. Nov. 12, 2021) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982)). "The Third Circuit has summarized four commonly recognized exceptions to the doctrine. First, a successor judge may

7

entertain a timely motion to reconsider the conclusions of an unavailable predecessor. Second, a judge may address an issue previously decided in the same litigation if new evidence is available to the second judge when hearing the issue. A third exception to the law of the case doctrine is that every court has a duty to apply a superseding rule of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to issues of the case. Finally, law of the case does not apply if the decision was clearly erroneous and would work a manifest injustice." *Geibel v. United States*, 667 F. Supp. 215, 219 (W.D. Pa. 1987); *see also In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 U.S. Dist. LEXIS 98830, at *70 n.14 (D.N.J. June 5, 2020).

Defendants made no attempt at showing that any exception to the law of the case doctrine applies here. Indeed, there are no facts that would support reconsideration. First, Defendants have not filed a timely motion, which was required to be filed by February 9, 2023 (*i.e.*, 14 days after the entry of the pre-motion conference order (ECF 67)). *See* Local Civil Rule 7.1(i). Instead, they merely raise the possibility of reconsideration *for the first time* in a reply brief, giving Plaintiffs no opportunity to respond. Second, Defendants presented no new evidence to support their request for reconsideration. Indeed, there is no new evidence that has been presented to the Court that was not presented to the unavailable predecessor judge. Third, Defendants recycled the same legal arguments, including citing the same purported authorities (only one of which was from the Third Circuit) that they presented earlier. In other words, there is no new legal rule that would justify reconsideration here. What's more, in their motion to dismiss, Defendants explicitly acknowledge that overwhelming legal precedent in the Third Circuit supports Plaintiffs' position and no court in the Third Circuit has overruled that precedent.

Finally, Defendants do not assert that the Court made a clearly erroneous finding that Plaintiffs had adequately pleaded facts to support standing at the motion to dismiss stage. Indeed, Defendants conceded standing was pleaded under the prevailing Third Circuit law. Nor have the Defendants attempted to show that a manifest injustice would occur absent reconsideration. Thus, the Defendants have presented nothing to the Court that would justify reconsideration of the issue of standing. Accordingly, Defendants' untimely and unsupported request for reconsideration should be denied.

8

**VII.    Even If the Court Reconsiders the Issue of Standing, the Second Amended Complaint Adequately Pleads Facts to Support Plaintiffs' Standing to Assert Section 11 Claims**

Even if the Court were to agree to Defendants' untimely, legally unsupported, and procedurally unsound request for reconsideration of the issue of standing, the Second Amended Complaint adequately pleads facts to support Plaintiffs' standing to assert Section 11 claims.

Any person acquiring a security "pursuant or traceable" to a materially false registration statement may file a Section 11 claim. 15 U.S.C. § 77k(a). Controlling precedent in the Third Circuit holds that plaintiffs may allege generally that their purchases of stock were in or traceable to the relevant stock offering. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 274 n.7[2] ("We…hold that plaintiffs' assertions of purchases 'in' and 'traceable to' the [relevant] stock offerings were sufficient at the pleading stage."); *Vrakas v. U.S. Steel Corp.*, 2018 U.S. Dist. LEXIS 168561, at *42 (W.D. Pa. Sep. 29, 2018) (district courts in this circuit are "bound by the precedential opinions of the Court of Appeals for [the] Third Circuit" regarding issues of traceability).

Here, Plaintiffs plainly allege that they purchased or otherwise acquired Butterfly Class A common stock "pursuant or traceable to the Defective Proxy/Registration Statement." ¶¶ 18-20. Thus, traceability in this Action is a factual question, to be resolved through discovery. *E.g., In re Suprema Specialties, Inc. Sec. Litig.*, 334 F. Supp. 2d 637, 649 (D.N.J. 2004) ("Because Plaintiffs have alleged that they have purchased 'in' or 'traceable to' the [] offerings, Plaintiffs have plead standing sufficiently at this motion to dismiss stage.").

Defendants speculate that Plaintiffs lack standing because, where shares have been registered in more than one offering, Section 11 plaintiffs "usually" will be unable to trace shares to a particular offering. Defendants' traceability argument relies entirely on out-of-circuit decisions. For example, *De Vito v. Liquid Holdings Grp., Inc.*, 2018 U.S. Dist. LEXIS 217963, at *42-44 (D.N.J. Dec. 31, 2018), the only case cited from this District, explicitly relies upon Ninth Circuit law contrary to *Suprema*. This

---

[2] Defendants concede that this is the controlling case law in the Third Circuit. MTD at 6, fn. 3 ("Defendants recognize that Third Circuit precedent currently holds that such generalized allegations may be sufficient to withstand a motion to dismiss. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006).").

9

Court should reject this outlier and must follow the binding law of the Third Circuit, as courts in this District routinely do. *See Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l, Inc.*, 2018 U.S. Dist. LEXIS 157328, at *17 (D.N.J. Sep. 14, 2018) (denying motion to dismiss, holding traceability is a factual inquiry to be resolved through discovery); *Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 469 (D.N.J. Jun. 15, 2017) (allegations of stock purchases "in" or "traceable to" public stock offerings sufficient to plead standing); *In re Valeant Pharms. Int'l, Inc. Sec. Litig.,* 2017 U.S. Dist. LEXIS 66037, at *42 (D.N.J. Apr. 28, 2017).

Moreover, in *De Vito*, unlike here, only 10% of outstanding shares were registered in the relevant offering, and in *In re Century Aluminum Co. Sec. Litig.*, it was 33%, making traceability "merely possible rather than plausible." 729 F.3d 1104, 1109 (9th Cir. 2013). The opposite is true in this case. Defendants concede[3] that when the merger closed, approximately 75% of Butterfly Class A shares were traceable to the Registration Statement at issue, and the record shows that Plaintiff Dan Liu purchased shares on February 16, 2021—*the first day Butterfly stock was publicly traded*—and Lead Plaintiff KNS Holdings purchased 10,875 shares of Butterfly stock just two days later, on February 18, 2021, and 20,383 more shares over the next five days. ECF 69; ECF 21-4. Thus, Lead Plaintiffs' large purchases on the day of the IPO and immediately after the merger, when approximately 75% of outstanding shares were newly registered, makes it more than plausible that Plaintiffs will be able to trace their shares to the Registration Statement. Defendants' argument otherwise is mere speculation.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

---

[3] *See* Defendants' Pre-Motion Letter, dated January 6, 2023, at 2. ECF 60 ("Approximately one-quarter of currently outstanding stock was registered under [a different] Form S-1").

DATED: December 5, 2023.

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/s/ Eduard Korsinsky*
Eduard Korsinsky
55 Broadway, 4th Floor Suite #427
New York, NY 10006
Tel: (212) 992-4523
Fax: (212) 363-7171
ek@zlk.com

Shannon L. Hopkins (admitted *pro hac vice*)
Gregory M. Potrepka (admitted *pro hac vice*)
David C. Jaynes (admitted *pro hac vice*)
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
shopkins@zlk.com
gpotrepka@zlk.com
djaynes@zlk.com

*Counsel for Plaintiffs and the Class*

11