**Seth R. Goldman**
+1.212.692.6845
SRGoldman@mintz.com




919 Third Avenue
New York, NY 10022
212 935 3000
mintz.com

February 3, 2025

**VIA CM/ECF**
Honorable Michael E. Farbiarz
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

Re: *Rose v. Butterfly Network, Inc.*, No. 2:22-cv-00854-MEF-JBC

Your Honor:

This letter responds to the Plaintiffs' submission dated January 29 (ECF 91), in which the Plaintiffs make three arguments for standing under Section 11 of the Securities Act. First, the Plaintifffs maintain that two of them, Liu and Metzger, "held shares of Longview that were converted to BFLY in the merger and therefore, 'acquired' their BFLY shares 'in' the offering pursuant to the S-4." ECF 91 at 2 (Plaintiffs "allege purchases 'in' the offering by way of converting their Longview shares"). There is no merit to this contention. Section 11 applies only to securities registered under the offending registration statement; to provide standing, "the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768 (2023); *id.* at 770 (purchased shares must be "traceable to the allegedly defective registration statement"); *Hertzberg v. Dignity Partners*, 191 F.3d 1076, 1080 (9th Cir. 1999) (plaintiff "must have purchased a security issued under that, rather than some other, registration statement").

In this case, the allegedly defective registration statement was the Form S-4 that Longview filed in connection with the Butterfly merger in January 2021. ECF 68, ¶ 1. The securities on which the Plaintiffs rely for standing, however, were shares in Longview that Liu and Metzger purchased *before* the merger with Butterfly. These were "preexisting shares," *Pirani*, 598 U.S. at 763, that had been registered under "some other registration statement," namely, the Form S-1 that accompanied Longview's IPO back in May 2020; they were not registered under the Form S-4 that is the only basis of the Section 11 claim. ECF 68, ¶ 56. All the shares registered under the Form S-4 were designated for distribution after the merger to holders of *Butterfly* stock, not holders of Longview stock. Dkt. 72, Ex. B, at 2, note (1). The owners of preexisting Longview stock, such as Liu and Metzger, didn't acquire new shares: they already owned stock in the surviving corporation (Longview), which was "converted" only in the inconsequential sense that—the surviving corporation having changed its name—their "Longview" shares became shares in "New Butterfly." The Form S-4 made clear, however, that the merger would otherwise "have no effect on the Longview Class A common stock that is issued and outstanding as of immediately prior to the Effective Time, which will continue to remain outstanding." Dkt. 72, Ex. B,at 3. Liu and Metzger's shares in Longview, therefore, were not registered by the Form S-4 and Liu and Metzger did not "acquire" them "in" the merger. Ownership of stock registered under a Form S-1 filed for an IPO in 2020 does not confer standing to pursue a Section 11 claim based on alleged misstatements in a Form S-4 filed for a merger in 2021.

The Plaintiffs' second argument is that they have pleaded standing through allegations that they purchased shares of "New Butterfly" on the secondary market soon after the merger took place, "when approximately 75% of BFLY Class A shares were traceable to the S-4 at issue." Pl's Letter Br. at 2. This argument is wrong on both the facts and the law. As a matter of fact, nothing in the Complaint




suggests that 75% of the shares trading on the post-merger secondary market had been registered under the Form S-4. According to the Form S-4, "New Butterfly" had 161,224,758 shares of Class A stock outstanding after the merger. Dkt. 72, Ex. B, 4. Only 91,974,758 of those shares were newly registered and all were "issued to Butterfly stockholders...." *Id.* The other 69,250,000 shares comprised (i) 51,750,000 preexisting Longview shares upon which the merger had "no effect" other than a change of name, and (ii) 17,500,000 shares issued to a group of PIPE investors in a separate financing transaction. *Id.* None of those shares were registered under the Form S-4. Thus, when the Plaintiffs purchased "New Butterfly" stock on the open market in February 2021, there was no more than a 57% chance (91,974,758/161,224,758) that any given share had been registered under the allegedly defective Form S-4. The case law does not support a claim of standing based on allegations of a *slightly-better-than-even* chance that a plaintiff's shares might be traceable to the offending registration statement. *Krim v. PCOrder.com*, 402 F.3d 489, 496 (5th Cir. 2005) (rejecting argument that "statistical determinations, being over 50%, demonstrate by a preponderance of the evidence, that it is 'more likely than not,' that [plaintiffs'] shares are traceable to the public offerings in question").

Even if their math was right, the Plaintiffs are wrong as a matter of law. They urge the Court to engage in "statistical tracing," conferring standing based on allegations that claim some of a plaintiff's stock "might have been, probably was, or most likely was, issued pursuant to a defective statement." *Krim*, 402 F.3d at 493. The statistical approach is invalid because it proves too much: if *these* plaintiffs have standing based on a 57% (or even a 75%) chance that one of their aftermarket shares was registered under the Form S-4, then "*every* aftermarket purchaser would have standing for every share" in their possession. *Id.* at 496. This is incompatible with Section 11, through which "Congress conferred standing on those who *actually* purchased the tainted stock, not on the whole class of those who *possibly* purchased tainted shares...." *Id.* at 500. The statistical tracing approach would effectively reverse the burden of proving standing, *see Lujan v. Defenders of Wildlife*, 504 U. 555, 560-61 (1992), requiring defendants to demonstrate—at risk of being subjected to strict liability under Section 11—that particular shares belonging to particular defendants were *not* traceable to the registration statement in controversy. Along with the Fifth Circuit, several federal courts have therefore rejected statistical tracing.[1]

Finally, allegations that the Plaintiffs bought stock on the secondary market soon after the Longview-Butterfly merger do not alter the equation. Allegations that a plaintiff bought stock on the date of an offering *might* be effective when they are coupled with allegations that the plaintiff bought the shares from the underwriter and did so at the original offering price—it is the underwriter's job to sell the registered shares at the offering price on the date of the offering. But where, as here, the plaintiff can only say, I bought my shares on the secondary market soon after a merger added a number of newly-registered shares to a preexisting pool, the case for standing remains purely probabilistic; the Court can infer nothing more than a *chance* that the plaintiff's stock "might have been, probably was, or most likely was, issued pursuant to a defective statement." *Krim*, 402 F.3d at 493.

---

1 *See, e.g., Kirkwood v. Taylor*, 590 F. Supp. 1375 (D. Minn. 1984) (rejecting "fungible mass" method); *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363 (M.D.Fla. 2008) ("It is clear that standing cannot be based on statistical likelihoods that all of the securities purchased can be traced to a specific faulty registration statement"); *In re Mirant Corp. Secs. Litig*., 2008 U.S. Dist. LEXIS 129994, at *43-44 (N.D.Ga. Aug. 5, 2008) (demonstrating standing through statistics "fails the tracing requirement of Section 11"); *In re Fleetboston Fin. Corp. Secs. Litig.*, 253 F.R.D. 315 (D.N.J. 2008) (following *Krim*).




Respectfully submitted,

/s/ Seth R. Goldman

Seth R. Goldman

SRG